COMMON PLEAS COURT

IN THE COURT OF COMMON PLEAS
BELMONT COUNTY, OHIO        AUG SEP 5 AM 9 36

| | |
|---|---|
| JOHN C. RAYBURN<br>236 Elyria Street<br>Lodi, OH 44254 | ) CASE NO. 18 CVE354<br>)<br>) JUDGE Frank A. Fregiato |
| Plaintiff, | ) |
| v. | ) |
| STAFFILINO CHEVROLET, INC.<br>900 South Fourth Street<br>Martins Ferry, OH 43935, | ) **COMPLAINT**<br>)<br>) (Jury Demand Endorsed Hereon) |
| and | ) |
| ANTHONY STAFFILINO<br>900 South Fourth Street<br>Martins Ferry, OH 43935, | ) |
| and | ) |
| SANTANDER CONSUMER USA, INC.<br>c/o Ct Corporation System<br>4400 Easton Commons Way<br>Suite 125<br>Columbus, OH 43219 | ) |
| Defendants. | ) |

NOW COMES John C. Rayburn, by and through undersigned Counsel, and for his Complaint against Defendants Staffilino Chevrolet, Inc., Anthony Staffilino, and Santander Consumer USA, Inc., avers and states the following:

## INTRODUCTION

1.    This action is brought to redress the deceptive and unlawful acts of the Defendants in connection with the advertisement, sale, financing, and repossession of a truck purchased as part of a consumer transaction.

1

2.    Plaintiff seek injunctive and other equitable relief, damages, appropriate statutory damages, reasonable attorney's fees, costs, and such other and further relief as this Honorable Court deems appropriate.

## PARTIES

3.    Plaintiff John C. Rayburn is an individual residing in Lodi, Ohio.

4.    Mr. Rayburn is a "consumer" as defined by R.C. § 1345.01(D).

5.    Mr. Rayburn is also a "debtor" and "consumer obligor" as defined in R.C. §§ 1309.102(28) & (59).

6.    Defendant Staffilino Chevrolet, Inc. ("Staffilino Chevrolet"), is an Ohio corporation in the business of selling and/or leasing motor vehicles to Ohio consumers.

7.    Staffilino Chevrolet is a "supplier" as that term is defined in R.C. § 1345.01(C).

8.    On information and belief, Defendant Anthony Staffilino is an individual, residing in Belmont County, Ohio.

9.    Mr. Staffilino is the owner of Staffilino Chevrolet, is actively engaged in the daily operations of that business, and was personally involved in the acts and omission of Staffilino Chevrolet described herein.

10.    Mr. Staffilino is a "supplier" as that term is defined in R.C. § 1345.01(C).

11.    Santander Consumer USA, Inc. ("Santander"), is a company engaged in the financing of consumer goods transactions in Ohio and nationally.

12.    Santander is a "supplier" as that term is defined in R.C. § 1345.01(C).

13.    Santander is a "creditor" pursuant to TILA, 15 U.S.C. 1602(g).

14.    Santander is a "secured party" defined by the R.C. §1309.102(72).

2

15.     This complaint relates to a "consumer transaction" as that term is defined in R.C. §
1345.01(A), whereby Mr. Staffilino and Staffilino Chevrolet sold a 2017 Chevrolet Colorado truck
(the "Vehicle") to Mr. Rayburn, and Mr. Staffilino and Staffilino Chevrolet subsequently assigned
the associated retail installment sales contract (Exhibit 1, the "RISC") to Santander.

## FACTS

16.     On August 31, 2017, Mr. Rayburn went to Staffilino Chevrolet to purchase a truck.

17.     While at the Staffilino Chevrolet dealership, Mr. Rayburn spoke with Mr.
Staffilino, who acted as the salesperson for the ensuing transaction.

18.     Mr. Staffilino offered to sell Mr. Rayburn the Vehicle, and he offered to give Mr.
Rayburn $1,500 for the trade-in of his current truck.

19.     The Vehicle had 15,570 miles on it at the time of sale.

20.     Mr. Staffilino prepared the RISC and presented it to Mr. Rayburn for signature.

21.     Although Mr. Staffilino had agreed to credit Mr. Rayburn $1,500 for his trade-in,
the RISC only credited him $500.

22.     The RISC also provided for a sale price of $36,624.19, $33.50 in fees, $175 for a
documentary fee, and $3,5000 for an extended service contract (Exhibit 2, which is incorrectly
dated for August 30, 2017).

23.     The RISC did not provide for any sales tax.

24.     In addition to the trade-in, Mr. Rayburn paid $5,000 down for the Vehicle; and the
RISC reflected a total down payment of $5,500 ($5,000 cash and $500 trade-in).

25.     The financing terms showed an "Amount Financed" for the unpaid balance of
$34,832.69, to be paid over 72 months with payments of $685.88 per month, for a total "Finance
Charge" of $14,550.67, and a "Total of Payments" of $49,383.36.

26. The RISC and the service contract, indicated that Staffilino Chevrolet was assigning the RISC to Santander, that Santander had agreed to finance the transaction, and that Santander was the lienholder on the Vehicle.

27. Unbeknownst to Mr. Rayburn, approximately five days earlier, Staffilino Chevrolet had advertised the Vehicle for $33,900, approximately $2,750 less than the sales price offered to him. (*See* Exhibit 3, "Detail Vehicle History" report).

28. On information and belief, the advertisement by Staffilino Chevrolet for this lower price did not specify any expiration date.

29. Staffilino Chevrolet never disclosed, and failed to offer, the advertised price for the Vehicle to Mr. Rayburn in violation of OAC §§ 109:4-3-16(B)(5), (17) & (34), which require the disclosure and offering of the advertised price of motor vehicles and which define as an unfair and deceptive the act to "[r]aise or attempt to raise the actual purchase price of any motor vehicle to a specific consumer."

30. Mr. Rayburn would not have agreed to purchase the Vehicle at the higher sales price stated had he known that Staffilino Chevrolet was offering the Vehicle for a lower price.

31. As such, Mr. Rayburn relied to his detriment on Staffilino Chevrolet's misrepresentation and omission of facts material to the Vehicle's sale price.

32. Staffilino Chevrolet's fraudulent conduct proximately caused Mr. Rayburn to suffer economic and noneconomic damages.

33. After signing paperwork for the transaction, Mr. Staffilino and Staffilino Chevrolet delivered the Vehicle to Mr. Rayburn.

34. However, Mr. Staffilino told Mr. Rayburn that copies of the transaction documents were not available for him at that time.

4

35.     Therefore, Mr. Rayburn took the Vehicle and left the dealership without receiving any paperwork for the sale, but with a promise that Mr. Staffilino and Staffilino Chevrolet would provide copies of the paperwork to him in the near future.

36.     Nearly a month later, on September 27, 2017, Mr. Staffilino called Mr. Rayburn and told him that he needed to return the Vehicle to Staffilino Chevrolet by September 29, 2017, because of an issue with financing.

37.     Mr. Staffilino told Mr. Rayburn that if he did not return the Vehicle by the stated date, the loan and the sales transaction would be canceled.

38.     Because Mr. Rayburn had paid $5,000 cash, given a trade-in, and signed paperwork, he believed that he had a binding agreement with Staffilino Chevrolet and that the Vehicle belonged to him.

39.     Therefore, he did not return the Vehicle.

40.     Nonetheless, Mr. Rayburn never received any communication or documentation from Santander (Staffilino Chevrolet) in the mail with instructions of how and when to make the agreed payments.

41.     As the end of the month came and went, and Mr. Rayburn continued to receive no bills or correspondence regarding the Vehicle, he came to believe Mr. Staffilino's representation that in fact the financing and sale had been canceled.

42.     As a result, on or about October 20, 2017, Mr. Rayburn went to a different motor vehicle dealer, located in Cambridge, Ohio, and purchased another truck for $48,286.86.

43.     He did not use the Vehicle for a trade-in, but made an initial cash payment ($28,000) and arranged financing for the balance.

5

44.     Still, as he had no way to transport the Vehicle, he left the Vehicle at the second dealership's lot (with its permission).

45.     Mr. Rayburn left and waited to hear again from Staffilino Chevrolet.

46.     On or about, November 2017, Mr. Rayburn received a letter from Staffilino Chevrolet, which enclosed two copies of the RISC and a copy of the service agreement.

47.     On December 14, 2017, Mr. Rayburn received a telephone call from "Mrs. Hunter" from Santander, inquiring of the location of the Vehicle.

48.     Mr. Rayburn readily told Mrs. Hunter the Vehicle's location.

49.     Santander contacted a repossession company, which took possession of the Vehicle on Santander's behalf.

50.     On December 26, 2017, Mr. Rayburn called Mr. Staffilino to demand the return of his deposit for the canceled transaction, but Mr. Staffilino refused to refund any monies paid.

51.     On December 27, 2017, Mrs. Hunter called again to Mr. Rayburn, this time to demand money in connection with the Vehicle.

52.     Santander never sent any correspondence, bills, or notices to Mr. Rayburn with respect to the Vehicle or its "repossession."

53.     Sometime prior to January 31, 2018, Santander reported to one or more credit reporting agencies that it had an account with Mr. Rayburn, that Mr. Rayburn failed to make payments on that account, and that it had closed the account and written off the debt for nonpayment.

54.     Prior to this incident, Mr. Rayburn had a credit score in the 700 range. As a result of this incident, Mr. Rayburn's credit fell by 300 points to the 400 range.

6

55.     Thus, Mr. Rayburn has suffered and continues to suffer economic and noneconomic injury from the actions and conduct of Mr. Staffilino, Staffilino Chevrolet, and Santander.

**FIRST CLAIM FOR RELIEF**
**Violations of the CSPA**
(Mr. Staffilino and Staffilino Chevrolet)

56.     Plaintiff incorporates the allegations contained in the previous paragraphs of the Complaint as though fully rewritten herein at length.

57.     **R.C. § 1345.02(A)** prohibits a supplier generally from engaging in unfair and deceptive acts in connection with a consumer transaction, before, during, and after the transaction. Specifically, **R.C. § 1345.02(B)(1)** defines as deceptive a supplier representing "that the subject of a consumer transaction has sponsorship, approval, performance characteristics, accessories, uses, or benefits that it does not have." By misrepresenting the terms of financing to Mr. Rayburn, Mr. Staffilino and Staffilino Chevrolet acted deceptively. Furthermore, **R.C. § 1345.02(B)(8)** defines as deceptive a supplier representing that "a specific price advantage exists, if it does not." By selling the Vehicle for significantly more than its advertised price, Mr. Staffilino and Staffilino Chevrolet acted deceptively in violation of this section of law.

58.     **R.C. § 1345.03(A)** prohibits a supplier generally from engaging in unconscionable acts in connect with a consumer transaction, before, during, and after the transaction. Specifically, **R.C. § 1345.03(B)(3)** provides that it is unconscionable for a supplier to knowingly enter a consumer transaction when the price is "substantially in excess of the price at which similar property or services were readily obtainable." Thus, by selling the Vehicle for significantly more than its advertised price, Mr. Staffilino and Staffilino Chevrolet acted unconscionably. Furthermore, **R.C. § 1345.03(B)(3)** provides that it is unconscionable for a supplier to engage in a consumer transaction when it "knew at the time the consumer transaction was entered into of the

7

inability of the consumer to receive a substantial benefit from the subject of the consumer transaction." To the degree that Mr. Staffilino and Staffilino Chevrolet knew at the time of the transaction that there would be an issue obtaining financing as promised, they acted unconscionably.

59.     These types of acts and practices of Mr. Staffilino and Staffilino Chevrolet have been determined by courts of this state to violate R.C. § 1345.02 or R.C. 1345.03, and after such decisions were made available for public inspection under R.C. § 1345.05(A)(3), as well as the OAC. These decisions include, but are not limited to, *State ex rel Petro v. Ray's Powersports, Inc.* (November 3, 2008), C.P. Cuyahoga Cty., No. CV 04 527042, PIF#10002719, *Knox v. Ludwick*, (October 31, 2001), Ct. App., 4th District, Case No. 00 CA 2569, Ross County, PIF#10002018. *Oster v. Swad Chevrolet* (August 2, 1982), Case No.81 AP 934, Ct. App., 10th District, Franklin County, PIF#10000410.

60.     In addition to the general and specific sections of the Revised Code, the Ohio Administrative Code defines specific acts and practices as violative of the CSPA, R.C. § 1345.02 and/or R.C. § 1345.03.

61.     **OAC § 109:4-3-07(B)** mandates "At the time of the initial deposit the supplier must provide to the consumer a dated written receipt." By failing to give Mr. Rayburn a receipt for his trade-in and/or his $5,000 cash deposit at the time of payment, as detailed above, Mr. Staffilino and Staffilino Chevrolet violated this requirement.

62.     OAC § 109:4-3-16 relates specifically to the "Advertisement and Sale of Motor Vehicles."

63.     **OAC § 109:4-3-16(B)(3)** prohibits the use of "any statement, layout, or illustration in any advertisement or sales presentation which could create in the mind of a reasonable consumer

8

a false impression as to any material aspect of said advertised or offered vehicle, or to convey or permit an erroneous impression as to which vehicles are offered for sale at which prices." Staffilino Chevrolet failed to indicate the appropriate amount of tax in the RISC and inserted an inflated price. By doing so, it created a false impression to Mr. Rayburn that the advertised and offered sales price (and related tax) of the Vehicle was something other than its true amount. This is deceptive conduct in violation of OAC § 109:4-3-16(B)(3).

64.      Regarding machinations of the advertised price of a motor vehicle, subsections **OAC §§ 109:4-3-16(B)(5), (17) & (34)** provide:

> (B) It shall be a deceptive and unfair act or practice for a dealer, manufacturer, advertising association, or advertising group, in connection with the advertisement or sale of a motor vehicle, to:
>
> (5) Advertise any motor vehicle for sale at a specific price or on specific terms and subsequently fail to show and make available for sale said vehicle as advertised.
>
> (17) Raise or attempt to raise the actual purchase price of any motor vehicle to a specific consumer....
>
> (34) Fail to notify a consumer of a dealer's currently advertised price for a motor vehicle.

65.      These OAC provisions apply and can be violated by a dealer, even if the consumer did not see the advertisement prior to the transaction. *Motzer Dodge Jeep Eagle, Inc., v. Ohio Attorney General*, 95 Ohio App.3d 183, 187 (12th Dist. 1994), PIF 10001316 (The OAC "clearly requires a dealer to show and make available for sale its vehicles as advertised, regardless of whether the customers saw, knew about or relied upon the advertisements").

66.      OAC § 109:4-3-16(B)(21) requires that the advertised price of a motor vehicle include "all costs to the consumer except tax, title and registration fees, and a documentary service charge."

9

67.     Additionally, OAC § 109: 4-3-16(B)(21) provides the advertised price must not include and account for discounts and rebates, unless the discount or rebate is on which all consumers qualify for and the "advertisement clearly discloses the deduction of such discount or rebate." Therefore, unless the advertisement discloses the discount or rebate, the advertised price must be the price without the discount or rebate.

68.     OAC § 109:4-3-16(B)(26) requires that if the terms of an advertised sale or offer is limited in time and subject to expiration, the dealer must "disclose the beginning **and ending dates** of any sale or other offer for the sale of a motor vehicle." [Emphasis added].

69.     If the advertisement does not include an ending date, the dealer must make the terms of the offer available for a minimum of ninety days.  *Motzer, supra,* p. 188,

70.     Staffilino Chevrolet advertised the Vehicle five days before its sale to Mr. Rayburn for $33,900, approximately $2,750 less than the sales price offered to him.  (*See* Exhibit 3).

71.     Mr. Staffilino and Staffilino Chevrolet did not notify Mr. Rayburn about the advertised price and charged him more.  (Exhibit 1.) Therefore, Mr. Staffilino and Staffilino Chevrolet violated OAC § 109:4-3-16(B)(34) by failing "to notify [him] of [Staffilino Chevrolet's] advertised price for [the Vehicle]."

72.     Likewise, Mr. Staffilino and Staffilino Chevrolet violated OAC § 109:4-3-16(B)(5) by advertising "any motor vehicle for sale at a specific price or on specific terms and subsequently fail to show and make available for sale said vehicle as advertised."

73.     Furthermore, because Mr. Staffilino and Staffilino Chevrolet charged him more than their advertised price, they raised the price to him.  As such, Mr. Staffilino and Staffilino Chevrolet violated OAC § 109:4-3-16(B)(17) by raising "the actual purchase price of any motor vehicle to a specific consumer."

10

74.    Beyond the explicit provisions of the Revised Code and the OAC, Courts have found various acts and practices to violate the CSPA.  In this regard, the failure of a supplier to give copies of transaction documents related to the sale of motor vehicle has been established to violate the CSPA.  *Eagle v. Fred Martin Motor Co.*, 157 Ohio App.3d 150, 179-180 (9th Dist. 2004).  Thus, Mr. Staffilino and Staffilino Chevrolet violated the CSPA by failing to give Mr. Rayburn copies of the transaction documents at the time of sale as described above.

75.    R.C. § 1317.02 also requires that the retail buyer receive a copy of the applicable retail installment sales contract "at the time of its execution."  As averred above, Mr. Staffilino and Staffilino Chevrolet failed to give Mr. Rayburn a copy of the RISC at the time of execution. This violation of RISA is a violation of the CSPA.  *See J & D Rack Co., Inc. v. Kreimer*, 194 Ohio App.3d 479, 484 (1st Dist. 2011).

76.    Mr. Staffilino and Staffilino Chevrolet violated the CSPA in other ways described hereinabove and below and to be proven at trial.

77.    Mr. Staffilino and Staffilino Chevrolet knowingly committed these unfair, deceptive, and/or unconscionable acts and practices.

78.    Mr. Staffilino and Staffilino Chevrolet committed these unfair, deceptive and/or unconscionable acts or practices after such decisions were made available for public inspection pursuant to R.C. § 1345.05(A)(3).

79.    As a result, Mr. Rayburn has suffered actual damages in the amount to be determined at trial, and he is entitled to the money, nonmonetary, statutory, legal, and equitable relief set forth in R.C. § 1345.09.

## SECOND CLAIM FOR RELIEF
### Violations of the CSPA
(Santander)

80.     Plaintiff incorporates the allegations contained in the previous paragraphs of the Complaint as though fully rewritten herein at length.

81.     By failing to communicate with Mr. Rayburn, by accepting assignment of the patently deceptive RISC and collecting upon it, and by making false reports to credit bureaus, Santander has acted unfairly, deceptively, and unconscionably in violation of R.C. §§ 1345.02 & 1345.03.

82.     Santander Chevrolet violated the CSPA in other ways described hereinabove and below and to be proven at trial.

83.     Santander knowingly committed these unfair, deceptive, and/or unconscionable acts and practices.

84.     Santander committed these unfair, deceptive and/or unconscionable acts or practices after such decisions were made available for public inspection pursuant to R.C. § 1345.05(A)(3).

85.     As a result, Mr. Rayburn has suffered actual damages in the amount to be determined at trial, and he is entitled to the money, nonmonetary, statutory, legal, and equitable relief set forth in R.C. § 1345.09.

## THIRD CLAIM FOR RELIEF
### Fraud, Fraud in the Inducement and Misrepresentation
(Mr. Staffilino and Staffilino Chevrolet)

86.     Plaintiff incorporates the allegations contained in the previous paragraphs of the Complaint as though fully rewritten herein at length.

87.     Staffilino Chevrolet advertised the price for the Vehicle for $33,900.

12

88.     Mr. Staffilino represented to Mr. Rayburn that the price of the Vehicle was significantly higher, $36,624.19.

89.     Unaware of the advertised price, Mr. Rayburn relied on Mr. Staffilino's representation to enter the RISC.

90.     Mr. Staffilino and Staffilino Chevrolet sold the Vehicle to Mr. Rayburn for approximately $2,750 more than advertised.

91.     Mr. Staffilino represented to Mr. Rayburn that the sale of the Vehicle and the RISC was canceled.

92.     Mr. Rayburn relied on this representation in purchasing alternative transportation, failing to make payments on the RISC, and allowing Santander to take possession of the Vehicle.

93.     Based on the circumstances described in detail above, including, without limitation, Mr. Staffilino's and Staffilino Chevrolet's failure to give Mr. Rayburn a copy of the RISC and Santander's failure to bill or otherwise communicate with him in timely fashion, Mr. Rayburn justifiably relied on the representations of Mr. Staffilino.

94.     If Mr. Rayburn knew that the true cash price was less, he would not have entered an agreement to pay a higher price; and if he had known the financing was not terminated, he would not have bought a new truck, surrendered the Vehicle, and failed to make payments on the RISC.

95.     As a direct and proximate result of Mr. Staffilino's and Staffilino Chevrolet's misrepresentations, acts, and omissions, Mr. Rayburn has been damaged in an amount to be determined at trial, including, without limitation, amounts paid and damages to his credit.

96.     As a direct and proximate result of Mr. Staffilino's and Staffilino Chevrolet's misrepresentations, Mr. Rayburn is entitled to actual and punitive damages.

13

## FOURTH CLAIM FOR RELIEF
### Breach of Contract
(Staffilino Chevrolet for its breaches; Santander for its breaches)

97.    Plaintiff incorporates the allegations contained in the previous paragraphs of the Complaint as though fully rewritten herein at length.

98.    Staffilino Chevrolet breached its contract with Mr. Rayburn by failing to act in good faith, by failing to give him copies of transaction documents in a timely fashion, by telling him that the agreement was canceling, by failing to convey good and proper title and quiet enjoyment of the Vehicle to him, by failing to give him proper instructions as to where and how to make payments on the RISC, and by other acts described herein and to be proven at trial.

99.    To the degree that Staffilino Chevrolet assigned the RISC to Santander and that Santander accept this assignment, Santander breach its contract with Mr. Rayburn by failing to act in good faith, by failing to bill him or otherwise communicate with him in a timely fashion, by failing to give him proper instructions as to where and how to make payments on the RISC, by taking possession of the Vehicle in an unlawful manner, by failing to provide proper notices to him regarding its taking possession of the Vehicle, and by other acts described herein and to be proven at trial.

100.    As a result, Mr. Rayburn has been injured by these breaches of contract of Staffilino Chevrolet and Santander, and he is entitled to damages.

101.    In addition, because the actions of Staffilino Chevrolet and Santander have been in bad faith, Mr. Rayburn is entitled to attorney's fees for the breaches of contract.

14

## FIFTH CLAIM FOR RELIEF
### Violation of the RISA, R.C. § 1317.12
(Santander)

102.    Plaintiff incorporates the allegations contained in the previous paragraphs of the Complaint as though fully rewritten herein at length.

103.    R.C. § 1317.12 requires a "Notice of Reinstatement" be sent to debtor(s) subsequent to repossession and states in pertinent part:

> ...the secured party shall ... send to the debtor a notice setting forth specifically the circumstances constituting the default and the amount by itemization that the debtor is required to pay to cure the default...

104.    Santander failed to send "Notices of Reinstatement" to Mr. Rayburn thereby violating R.C. § 1317.12.

105.    As a direct and proximate result, Mr. Rayburn has suffered economic losses in an amount to be determined at trial.

106.    In addition, a holder's failure to comply with the mandatory requirements of the above precludes it from lawfully collecting any deficiency from the borrower following disposition of the repossessed vehicle.

## SIXTH CLAIM FOR RELIEF
### Violation of the RISA, R.C. § 1317.16
(Santander)

107.    Plaintiff incorporates the allegations contained in the previous paragraphs of the Complaint as though fully rewritten herein at length.

108.    R.C. § 1317.16 requires a "Notice of Sale" be sent to debtors prior to sale of their vehicle and states in pertinent part:

> Disposition of the collateral shall be by public sale only. Such sale may be as a unit or in parcels and the method, manner, time, place, and terms thereof shall be commercially reasonable. At least ten

15

days prior to sale the secured party shall send notification of the time and place of such sale and of the minimum price for which such collateral will be sold....

109. Santander failed to send a "Notice of Sale" to Mr. Rayburn thereby violating R.C. § 1317.16.

110. The failure to send this notice constitutes a violation of RISA and renders the sale of the vehicles not commercially reasonable.

111. As a direct and proximate result, Mr. Rayburn has suffered economic losses in an amount to be determined at trial.

112. In addition, a holder's failure to comply with the mandatory requirements of the above precludes it from lawfully collecting any deficiency from the borrower following disposition of the repossessed vehicle.

### SEVENTH CLAIM FOR RELIEF
**Violation of the O.U.C.C., R.C. §§ 1309.610/1309.614**
(Santander)

113. Plaintiff incorporates the allegations contained in the previous paragraphs of the Complaint as though fully rewritten herein at length.

114. Like RISA, the O.U.C.C., R.C. § 1309.614 requires that a "Notice of Sale" be sent to debtors.

115. Santander failed to send a "Notice of Sale" to Mr. Rayburn thereby violating R.C. § 1309.614.

116. The failure to send this notice constitutes a violation of O.U.C.C. and renders the sale of the vehicles not commercially reasonable.

117. As a direct and proximate result Mr. Rayburn has suffered economic losses in an amount to be determined at trial.

16

118.   In addition, a secured party's failure to comply with the mandatory notice requirements of R.C. §§ 1309.610/1309.614 renders it liable to the borrower who financed consumer goods for statutory damages in the amount of the entire finance charge plus ten (10%) percent of the principal amount borrowed, pursuant to R.C. § 1309.625(C)(2).

## EIGHTH CLAIM FOR RELIEF
### Violation of the O.U.C.C., R.C. § 1309.616
(Santander)

119.   Plaintiff incorporates the allegations contained in the previous paragraphs of the Complaint as though fully rewritten herein at length.

120.   Pursuant to R.C. § 1309.616(B):

> In a consumer-goods transaction in which the debtor is entitled to a surplus or a consumer obligor is liable for a deficiency under section 1309.615 of the Revised Code, the secured party shall: (1) Send an explanation to the debtor or consumer obligor, as applicable, after the disposition . . .

121.   Santander failed to send a notice of deficiency sent to Mr. Rayburn in violation of R.C. § 1309.616.

122.   Thus, Mr. Rayburn was deprived of the information necessary to determine whether the proceeds from the vehicle's sales was applied properly, expenses and credits legitimately calculated, and most importantly whether he had any residual liability or there was a surplus which should have been paid to him.

123.   As a direct and proximate result of the acts herein-above alleged, Mr. Rayburn has suffered economic losses in an amount to be determined at trial.

124.   A secured party's failure to comply with this requirement bars it from being able to collect any alleged deficiency.

17

125. In addition, a secured party's failure to comply with the mandatory notice requirements of R.C. 1309.616(B)(1), renders it liable to the borrower who financed consumer goods for statutory damages in the amount of $500 per borrower.

## NINTH CLAIM FOR RELIEF
### FTC Holder Rule-Derivative Liability
(Santander)

126. Plaintiff incorporates the allegations contained in the previous paragraphs of the Complaint as though fully rewritten herein at length.

127. Mr. Rayburn realleges and incorporates by reference the allegations contained in each of the preceding paragraphs as though expressly restated herein.

128. Mr. Rayburn executed the RISC with Staffilino Chevrolet to finance the purchase of his vehicle and this contract was assigned to Santander.

129. The RISC contains a clause which states:

## NOTICE

**ANY HOLDER OF THIS CONSUMER CREDIT CONTRACT IS SUBJECT TO ALL CLAIMS AND DEFENSES WHICH THE DEBTOR COULD ASSERT AGAINST THE SELLER OF GOODS OR SERVICES OBTAINED PURSUANT HERETO OR WITH THE PROCEEDS HEREOF. RECOVERY HEREUNDER BY THE DEBTOR SHALL NOT EXCEED AMOUNTS PAID BY THE DEBTOR HEREUNDER.**

130. As such, Santander has derivative liability to Mr. Rayburn for any act in violation of law as described herein, which was committed by Staffilino Chevrolet.

## PRAYER FOR RELIEF

WHEREFORE, Plaintiffs respectfully pray for relief as follows, against Mr. Staffilino, Staffilino Chevrolet and/or Santander, as applicable, for:

 a) an order finding and declaring the acts and practices of Mr. Staffilino and Staffilino Chevrolet as challenged herein are unfair, deceptive and/or unconscionable;

18

b) an order preliminarily and permanently enjoining Mr. Staffilino and Staffilino Chevrolet from engaging in the practices challenged herein;

c) an order determining and awarding actual damages for economic losses, including monies paid, losses incurred, and damage to credit;

d) an order determining noneconomic damages, including, without limitation, emotional damage, aggravation, embarrassment, damage to reputation, annoyance, frustration, and the similar losses;

e) statutory damages as provided by TILA, O.U.C.C., RISA, and/or the CSPA;

f) injunctive relief to repair credit;

g) declaratory relief that no balance is on the RISC;

h) pre- and post-judgment interest;

i) attorney fees as provided by statute and common law;

j) punitive damages; and

k) any other and further relief as this Honorable Court deems just and proper.

Respectfully submitted,

Ronald I. Frederick (0063609)
Michael L. Berler (0085728)
Frederick & Berler LLC
767 East 185th Street
Cleveland, Ohio 44119
(216) 502-1055 phone
(216) 566-9400 fax
ronf@clevelandconsumerlaw.com
mikeb@clevelandconsumerlaw.com
*Attorneys for Plaintiffs*

### JURY DEMAND

Plaintiffs hereby demands a trial by jury on all issues so triable.

Ronald I. Frederick (0063609)
Frederick & Berler LLC

19

RETAIL INSTALLMENT SALE CONTRACT
SIMPLE FINANCE CHARGE



EXHIBIT

OTHER IMPORTANT AGREEMENTS

1. FINANCE CHARGE AND PAYMENTS

2. YOUR OTHER PROMISES TO US

3. IF YOU PAY LATE OR BREAK YOUR OTHER PROMISES

4. WARRANTIES SELLER DISCLAIMS

5. Used Car Buyers Guide

6. SERVICING AND COLLECTION CONTACTS

7. APPLICABLE LAW

Limited Right to Cancel

NOTICE: ANY HOLDER OF THIS CONSUMER CREDIT CONTRACT IS SUBJECT TO ALL CLAIMS AND DEFENSES WHICH THE DEBTOR COULD ASSERT AGAINST THE SELLER OF GOODS OR SERVICES OBTAINED PURSUANT HERETO OR WITH THE PROCEEDS HEREOF. RECOVERY HEREUNDER BY THE DEBTOR SHALL NOT EXCEED AMOUNTS PAID BY THE DEBTOR HEREUNDER.

# VEHICLE ONE

**Vehicle Service Contract**
**Registration**

**Contract Number:** 13002621

| Purchaser Information | | Vehicle Information | |
|---|---|---|---|
| Name: | john c rayburn | VIN: | 1GCGTDEN7H1118585 |
| Address | 632 Lovers Ln | Year & Make: | 2017 CHEVROLET |
| City, ST Zip: | Steubenville, OH 43953-3314 | Model: | COLORADO |
| Phone: | (740) 381-9051 | Current Odometer: | 15570 |
| Email Address: | | 4-wheel drive: | ☑ Yes |

**EXHIBIT 2**

| Issuing Dealer Information | | | |
|---|---|---|---|
| Name: | STAFFILINO CHEVROLET | Super / Turbo charger: | ☐ Yes |
| Address: | PO Box 220 | Diesel: | ☐ Yes |
| | | One ton: | ☐ Yes |
| City, ST Zip: | MARTINS FERRY, OH 43935 | Dual Rear Wheels: | ☐ Yes |
| Phone: | (740) 633-3911 | Lift Kit (Limited to 6"): | ☐ Yes   Snowplow: ☐ Yes |
| Email Address: | | Vehicle Purchase Date: 8/30/2017 | |

**Indicate Contract Coverage:** ☐ Basic  ☐ Major  ☐ Select  ☑ Premium (Includes Seals & Gaskets and High Tech Optional Coverages)

**Indicate Selected Options:**

| Wear & Tear: (Not available in Kentucky) ☐ Yes | Seals & Gaskets: ☑ Yes |
|---|---|
| High Tech: ☑ Yes | Commercial Use: ☐ Yes |
| Luxury Electronics Package: ☐ Yes | |

**Deductible Options:** $200° ☐ Yes   $50° ☐ Yes   Reducing Deductible° ☑ Yes See Part I, Definitions.
° If no Deductible option is indicated, a standard $100 Deductible will automatically apply.

**Contract Purchase Date:** 8/30/2017

**Indicate Length of Protection:** Months: 60   Miles: 100000   ☑ New   ☐ Used ° See CONTRACT TERM for more detail.

**Lienholder Information:** Name: Santander Consumer USA Inc
Address: Po Box 25120, Lehigh Valley, PA 18002

Failure To Follow The Manufacturer's Recommendations For Servicing Your Vehicle Will Result In The Denial Of Coverage. A listing of components not covered, conditions not covered, how to cancel Your Contract, Your right to a refund, Your responsibilities, maintenance requirements, and how to file a claim can be found in PART III. GENERAL PROVISIONS within this service Contract.

**CONTRACT TERM:**
The Length of Protection begins on the Contract Purchase Date and will expire at the earlier of the time and/or mileage chosen or when the Limit of Liability as referenced in PART III. GENERAL PROVISIONS (4) LIMIT OF LIABILITY has been reached. For New Vehicle Plans, the Length of Protection is measured in time from the Contract Purchase Date and in mileage from zero (0) miles. For Used Vehicle Plans, the Length of Protection is measured in time and mileage from the Contract Purchase Date.

THE TERM OF YOUR CONTRACT MAY INCLUDE ALL OR PART OF THE TERM OF YOUR MANUFACTURER'S WARRANTY. THIS CONTRACT DOES NOT PROVIDE COVERAGE FOR PARTS OR SERVICES WHEN SUCH PARTS OR SERVICES ARE SUBJECT TO YOUR MANUFACTURER'S WARRANTY OR ANY OTHER WARRANTY.

WASHINGTON DISCLOSURE – Pursuant to Washington Statute 48.110.075, by signing this form, I acknowledge that I have been provided a sample copy of this Contract text for review. I agree that I have read and understood the following Contract provisions and implied warranty disclosures.
  1. Part III, GENERAL PROVISIONS which advises You of Your rights and obligations relating to the following items  (1) MAINTENANCE SERVICES AND COMPONENTS NOT COVERED, (2) CONDITIONS NOT COVERED, (5) TRANSFER OF YOUR CONTRACT, (6) TO CANCEL YOUR CONTRACT, "Your Right to a Refund", (B) YOUR RESPONSIBILITIES. (a) Maintenance Requirements, (b) Filing a Claim.
  2. The Coverages that this Contract provides are in Part II, Coverage; the Contract Term is under Part III, General Provisions (3) Contract Term and (4) Limit of Liability.

States where applicable:
The implied warranty of merchantability on the motor vehicle is not waived if this Contract has been purchased within ninety days of the purchase date of the motor vehicle from a provider or service contract seller who also sold the motor vehicle covered by this Contract. I have read, understand, and agree (i) to the Conditions, Coverage and General Provisions of this Contract and (ii) this Contract is not an insurance policy or product warranty, implied or otherwise. I understand, that, upon acceptance of this registration, Contract will be mailed to the address indicated above. I understand that the above information is subject to verification and that this Contract may be rejected by the Administrator if any of the above information is incorrect or if the Vehicle is ineligible for the Coverage or Length of Protection written as determined by the Administrator. (The last sentence of this paragraph does not apply in Arizona).

Purchaser Signature _____ Date _____ Contract Price $ 3500.00   Signature of Dealer Representative _____ Date 8·30·17

The Administrator and Provider of this Contract is Universal Warranty Corporation, P.O. Box 802528, Chicago, IL 60680, 1-866-215-7080. California Provider License #0C97550.
THE CONTRACT IS INSURED – Our obligations under this Contract are guaranteed by an insurance policy issued by MIC Property and Casualty Insurance Corporation (Policy No. CL2000 7/00), P.O. Box 5074, Southfield, Michigan, 48086. You may request a cancellation refund or if a covered claim is not paid within sixty (60) days after proof of loss has been filed, You may file a claim directly with the Insurance Company. Please call 1-866-215-7080 for instructions.
PURCHASE OF THIS CONTRACT IS NOT REQUIRED IN ORDER TO PURCHASE A VEHICLE OR OBTAIN VEHICLE FINANCING. IF THIS CONTRACT HAS BEEN FINANCED, ABOVE LIENHOLDER SHALL BE ENTITLED TO ANY REFUNDS RESULTING FROM CANCELLATION.

VI-REG (10-12)   Customer Copy   LZX 92636

NOTE: IF YOU DON'T RECEIVE YOUR AGREEMENT IN 60 DAYS, CALL 1-866-215-7080

3/19/2018                                    2017 Chevrolet Colorado Rating Breakdown

DETAILED REPORT ˅

# 2017 Chevrolet Colorado

Vehicle Identification Number: 1GCGTDEN7H1118585

**Assembly Location:** United States Wentzville, Missouri

Search Another VIN (../vehicle/land.php)

**Vehicle Age 1 year(s)**





No Accident Records

No Theft Records

No Junk Salvage Records

62 Point Title Information

0 Record(s)
0 Record(s)
0 Record(s)
0 Record(s)

Odometer Readings

2 Record(s) 4 Record(s)

0 Record(s)

Sales Information

NHTSA Recalls



 Detailed Vehicle History



EXHIBIT
3

3/18/2018                                    2017 Chevrolet Colorado Rating Breakdown

Below are the historical events for this vehicle listed in chronological order. Any discrepancies will be in bold text. Accident, Odometer, Previous Use, Theft, Lien, Junk/Salvage and 62 Point Title Inspections are all US based databases, international records are not available.

| | | |
|---|---|---|
| **Date** | : | 2016 |
| **Mileage** | : | |
| **Source** | : | Original Manufacturer |
| **Details** | : | Fuel Economy Test 17 MPG Hwy / 24 MPG City |

| | | |
|---|---|---|
| **Date** | : | 2016 |
| **Mileage** | : | |
| **Source** | : | Original Manufacturer |
| **Details** | : | Shipped to Dealer - Original MSRP: 35780 |

| | | |
|---|---|---|
| **Date** | : | 2016 |
| **Mileage** | : | |
| **Source** | : | Original Manufacturer |
| **Details** | : | Manufactured in United States Wentzville, Missouri |

| | | |
|---|---|---|
| **Date** | : | 10-04-2016 |
| **Mileage** | : | 10 mi. |
| **Source** | : | Michigan |
| **Details** | : | Historical Odometer Record |

| | | |
|---|---|---|
| **Date** | : | 08-19-2017 |
| **Mileage** | : | 15,286 mi. |
| **Source** | : | Staffilino Chevrolet Inc |
| **Details** | : | Listing Price : $36,875<br>Vehicle Mileage : 15,286 miles<br>Vehicle Color : Silver |

| | | |
|---|---|---|
| **Date** | : | 08-22-2017 |
| **Mileage** | : | 15,286 mi. |
| **Source** | : | Ohio |
| **Details** | : | Historical Odometer Record |

3/19/2018                                    2017 Chevrolet Colorado Rating Breakdown

| | | |
|---|---|---|
| **Date** | : | 08-26-2017 |
| **Mileage** | : | 15,570 mi. |
| **Source** | : | Staffilino Chevrolet |
| **Details** | : | Listing Price : $33,900 |
| | | Vehicle Mileage : 15,570 miles |
| | | Vehicle Color : Silver |

| | | |
|---|---|---|
| **Date** | : | 10-19-2017 |
| **Mileage** | : | 15,570 mi. |
| **Source** | : | Ohio |
| **Details** | : | Historical Odometer Record |

| | | |
|---|---|---|
| **Date** | : | 12-31-2017 |
| **Mileage** | : | |
| **Source** | : | NMVTIS |
| **Details** | : | No Problems Reported |

| | | |
|---|---|---|
| **Date** | : | 01-22-2018 |
| **Mileage** | : | UNKNOWN |
| **Source** | : | Ohio |
| **Details** | : | Current Odometer Record |

| | | |
|---|---|---|
| **Date** | : | 03-19-2018 |
| **Mileage** | : | |
| **Source** | : | NICB |
| **Details** | : | Vehicle Status : Not Stolen |

| | | |
|---|---|---|
| **Date** | : | 2020 |
| **Mileage** | : | 2yr/36,000 mi. |
| **Source** | : | Chevrolet |
| **Details** | : | Basic Warranty: 2 years |

| | | |
|---|---|---|
| **Date** | : | 2022 |

3/19/2018                                              2017 Chevrolet Colorado Rating Breakdown

| | | |
|---|---|---|
| **Mileage** | : | 4yr/100,000 mi. |
| **Source** | : | Chevrolet |
| **Details** | : | Roadside Assistance: 4 years |
| | | |
| **Date** | : | 2022 |
| **Mileage** | : | 4yr/100,000 mi. |
| **Source** | : | Chevrolet |
| **Details** | : | Powertrain Warranty: 4 years |
| | | |
| **Date** | : | 2023 |
| **Mileage** | : | 5yr/100,000 mi. |
| **Source** | : | Chevrolet |
| **Details** | : | Corrosion Warranty: 5 years |

 ## Accident Records

This section identifies accident records on vehicle history are composed of a number of state sources and some independent agencies, they are based strictly on the information that is available to us.



No Accident Records!

 ## Odometer Records Source : NMVTIS

| DATE | STATE OF TITLE | RECORD TYPE | MILEAGE | VIN |
|---|---|---|---|---|
| 10-04-2016 | Michigan | Historical | 10 mi. | 1GCGTDEN7H1118585 |
| 08-22-2017 | Ohio | Historical | 15286 mi. | 1GCGTDEN7H1118585 |
| 10-19-2017 | Ohio | Historical | 15570 mi. | 1GCGTDEN7H1118585 |
| 01-22-2018 | Ohio | Current | EXEMPT | 1GCGTDEN7H1118585 |

3/19/2018                                   2017 Chevrolet Colorado Rating Breakdown

 Sales Records

| DATE | SELLER NAME | DETAILS |
|------|-------------|---------|
| 08-19-2017 | Staffilino Chevrolet Inc (http://) | Listing for : sale<br>Listing Price : $36,875<br>Vehicle Mileage : 15,286 miles<br>Vehicle Color : Silver |
| 08-26-2017 | Staffilino Chevrolet (http://) | Listing for : sale<br>Listing Price : $33,900<br>Vehicle Mileage : 15,570 miles<br>Vehicle Color : Silver |

 Previous Vehicle Uses

This section identifies if a vehicle has previously been used as a rental, taxi, police, or test vehicle.

**4 Vehicle Uses Checked:**                    **0 Event(s) Reported**

**No Rental Use Record**

No Issues Found

**No Taxi Use Record**

No Issues Found

**No Police Use Record**

No Issues Found

**No Test Use Record**

No Issues Found

Theft Records

No Theft or Theft Recovery Records Found !

3/19/2018                                    2017 Chevrolet Colorado Rating Breakdown

 Lien / Impound / Export Records

No Lien / Impound / Export Records Found!

 Junk / Salvage / Insurance Record Source : NMVTIS

No Junk / Salvage / Insurance Record Found!

 Salvage Auction Record

No Salvage Auction Record !

 Vehicle Recalls

Recalls:0
Service Bulletins: 0
No vehicle recalls records found!

## Find the latest NHTSA recall information on this vehicle with www.safecar.gov

This search tool will specify if this vehicle has not been repaired as part of a safety recall in the last 15 years.

| 1GCGTDEN7H1118585 | Submit |



 Technical Service Bulletins (TSBs)

These "secret warranties," TSBs cover known problems and provide repair instructions for service technicians and accordingly are distributed to all of the manufacturer's dealerships. Generally these repairs will be free of charge only if the vehicle is still under warranty.

| DATE | | | COMPONENT | DETAILS |
|------|--|--|-----------|---------|
| 01-19-2016 | 353000 Equipment:electrical | This technical bulletin provides a procedure to update your apple product to the latest software version to correct a condition of infotainment | | |

3/19/2018                                      2017 Chevrolet Colorado Rating Breakdown

**DATE**                                                                    **COMPONENT**   **DETAILS**

|  |  |  |  |
|---|---|---|---|
|  |  | system will not return to media after bluetooth call ends |  |
| 01-19-2016 | 118000 Electrical System: Software | This technical bulletin provides a procedure to update your apple product to the latest software version to correct a condition of infotainment system will not return to media after bluetooth call ends |  |
| 02-08-2016 | 121000 Exterior Lighting:headlights | This informational bulletin provides information on exterior lamp condinsation and replacement guidelines |  |
| 02-08-2016 | 350000 Equipment | This preliminary information communication provides information to the technician that after replacing the instrument panel cluster the exchange center is unable to program the actual mileage on the odometer or the actual mileage is unknown |  |
| 02-08-2016 | 117000 Digital Instrument Panel | This preliminary information communication provides information to the technician that after replacing the instrument panel cluster the exchange center is unable to program the actual mileage on the odometer or the actual mileage is unknown |  |
| 02-12-2016 | 125000 Exterior Lighting:brake Lights | This informational bulletin provides an out line on headlamp, tail lamp, license lamp or fog/driving lamp damage and what should be considered warranty replacement and not |  |
| 02-12-2016 | 124000 Exterior Lighting:back Up Lights | This informational bulletin provides an out line on headlamp, tail lamp, license lamp or fog/driving lamp damage and what should be considered warranty replacement and not |  |
| 02-12-2016 | 121000 Exterior Lighting:headlights | This informational bulletin provides an out line on headlamp, tail lamp, license lamp or fog/driving lamp damage and what should be considered warranty replacement and not |  |
| 02-22-2016 | 355200 Equipment:other:owners/service/other Manual |  | This informational bulletin provides information regarding servicing components located near sir components and how to properly disable the sir system for repairs at or near |

3/19/2018                                                    2017 Chevrolet Colorado Rating Breakdown

**DATE**                                                              **COMPONENT**    **DETAILS**

02-        353000                  This informational bulletin provides information
22-        Equipment:electrical    regarding servicing components located near sir
2016                               components and how to properly disable the sir
                                   system for repairs at or near

Show More

##  62 Point Title Inspection Source : NMVTIS

This section identifies our 62 point title inspection searches for permanent negative flags associated with the vehicles VIN from the state DMV and other government agencies. The below title checks are all potential problems related to the title of this vehicle.

**Flood damage**
No Issues Found   Not Reported As A Flood damage To VehicleHistory

**Fire damage**
No Issues Found   Not Reported As A Fire damage To VehicleHistory

**Hail damage**
No Issues Found   Not Reported As A Hail damage To VehicleHistory

**Salt water damage**
No Issues Found   Not Reported As A Salt water damage To VehicleHistory

**Vandalism**
No Issues Found   Not Reported As A Vandalism To VehicleHistory

**Kit**
No Issues Found   Not Reported As A Kit To VehicleHistory

**Dismantled**
No Issues Found   Not Reported As A Dismantled To VehicleHistory

**Junk**
No Issues Found   Not Reported As A Junk To VehicleHistory

**Rebuilt**
No Issues Found   Not Reported As A Rebuilt To VehicleHistory

**Reconstructed**
No Issues Found   Not Reported As A Reconstructed To VehicleHistory

**Salvage: Damage or Not Specified**
No Issues Found   Not Reported As A Salvage: Damage or Not Specified To VehicleHistory

**Test Vehicle**
No Issues Found   Not Reported As A Test Vehicle To VehicleHistory

**Refurbished**
No Issues Found   Not Reported As A Refurbished To VehicleHistory

**Collision**
No Issues Found   Not Reported As A Collision To VehicleHistory

**Salvage Retention**
No Issues Found   Not Reported As A Salvage Retention To VehicleHistory

**Prior Taxi**
No Issues Found   Not Reported As A Prior Taxi To VehicleHistory

**Prior Police**
No Issues Found   Not Reported As A Prior Police To VehicleHistory

**Original Taxi**
No Issues Found   Not Reported As A Original Taxi To VehicleHistory

**Original Police**
No Issues Found   Not Reported As A Original Police To VehicleHistory

**Remanufactured**
No Issues Found   Not Reported As A Remanufactured To VehicleHistory

**Gray Market**
No Issues Found   Not Reported As A Gray Market To VehicleHistory

**Warranty Return**
No Issues Found   Not Reported As A Warranty Return To VehicleHistory

**Antique**
No Issues Found   Not Reported As A Antique To VehicleHistory

**Classic**
No Issues Found   Not Reported As A Classic To VehicleHistory

**Agricultural Vehicle**
No Issues Found   Not Reported As A Agricultural Vehicle To VehicleHistory

**Logging Vehicle**
No Issues Found   Not Reported As A Logging Vehicle To VehicleHistory

**Street Rod**
No Issues Found   Not Reported As A Street Rod To VehicleHistory

**Vehicle Contains Reissued VIN**
No Issues Found   Not Reported As A Vehicle Contains Reissued VIN To VehicleHistory

**Replica**
No Issues Found   Not Reported As A Replica To VehicleHistory

**Totaled**
No Issues Found   Not Reported As A Totaled To VehicleHistory

**Owner Retained**
No Issues Found   Not Reported As A Owner Retained To VehicleHistory

**Bond Posted**
No Issues Found   Not Reported As A Bond Posted To VehicleHistory

**Memorandum Copy**
No Issues Found   Not Reported As A Memorandum Copy To VehicleHistory

**Parts Only**
No Issues Found   Not Reported As A Parts Only To VehicleHistory

**Recovered Theft**
No Issues Found   Not Reported As A Recovered Theft To VehicleHistory

**Undisclosed Lien**
No Issues Found   Not Reported As A Undisclosed Lien To VehicleHistory

**Prior Owner Retained**
No Issues Found   Not Reported As A Prior Owner Retained To VehicleHistory

**Vehicle Non-conformity Uncorrected**
No Issues Found   Not Reported As A Vehicle Non-conformity Uncorrected To VehicleHistory

**Vehicle Non-conformity Corrected**
No Issues Found   Not Reported As A Vehicle Non-conformity Corrected To VehicleHistory

**Vehicle Safety Defect Uncorrected**
No Issues Found   Not Reported As A Vehicle Safety Defect Uncorrected To VehicleHistory

**Vehicle Safety Defect Corrected**
No Issues Found   Not Reported As A Vehicle Safety Defect Corrected To VehicleHistory

**VIN Replaced**
No Issues Found   Not Reported As A VIN Replaced To VehicleHistory

**Gray Market: Non-compliant**
No Issues Found   Not Reported As A Gray Market: Non-compliant To VehicleHistory

**Gray Market: Compliant**
No Issues Found   Not Reported As A Gray Market: Compliant To VehicleHistory

**Manufacturer Buy Back**
No Issues Found   Not Reported As A Manufacturer Buy Back To VehicleHistory

**Former Rental**
No Issues Found   Not Reported As A Former Rental To VehicleHistory

**Salvage: Stolen**
No Issues Found   Not Reported As A Salvage: Stolen To VehicleHistory

**Salvage: Reasons Other Than Damage or Stolen**
No Issues Found   Not Reported As A Salvage: Reasons Other Than Damage or Stolen To VehicleHistory

**Disclosed Damage**
No Issues Found   Not Reported As A Disclosed Damage To VehicleHistory

**Prior Non-Repairable / Repaired**
No Issues Found   Not Reported As A Prior Non-Repairable / Repaired To VehicleHistory

**Crushed**
No Issues Found   Not Reported As A Crushed To VehicleHistory

**Odometer: Actual**
No Issues Found   Not Reported As A Odometer: Actual To VehicleHistory

**Odometer: Not Actual**
No Issues Found   Not Reported As A Odometer: Not Actual To VehicleHistory

**Odometer: Tampering Verified**
No Issues Found   Not Reported As A Odometer: Tampering Verified To VehicleHistory

**Odometer: Exempt from Odometer Disclosure**
No Issues Found   Not Reported As A Odometer: Exempt from Odometer Disclosure To VehicleHistory

**Odometer: Exceeds Mechanical Limits**
No Issues Found   Not Reported As A Odometer: Exceeds Mechanical Limits To VehicleHistory

**Odometer: May be Altered**
No Issues Found   Not Reported As A Odometer: May be Altered To VehicleHistory

**Odometer: Replaced**
No Issues Found   Not Reported As A Odometer: Replaced To VehicleHistory

**Odometer: Reading at Time of Renewal**
No Issues Found   Not Reported As A Odometer: Reading at Time of Renewal To VehicleHistory

**Odometer: Discrepancy**
No Issues Found   Not Reported As A Odometer: Discrepancy To VehicleHistory

**Odometer: Call Title Division**
No Issues Found   Not Reported As A Odometer: Call Title Division To VehicleHistory

**Odometer: Exceeds Mechanical Limits Rectified**
No Issues Found   Not Reported As A Odometer: Exceeds Mechanical Limits Rectified To VehicleHistory

f Share on
Facebook (https://www.facebook.com/dialog/feed?
app_id=184683071273&link=https://www.vehiclehistory.com/vehicle?
bWphUSs4aWZDcjliMzdPWmc3SlFvSFVrS0pHZnJBK2ppa0VxazJTalh3cz0=&1521473068&picture=https://d3rdv3sa
compressed/stills_white_1280/MY2017/11442/11442_st1280_043.jpg&name=&caption=%20&description=&redirect_u
Share on
Twitter (https://twitter.com/home?
status=Vehicle%20History%20For%20VIN%201GCGTDEN7H1118585%202017%20Chevrolet%20Colorado%20http
bWphUSs4aWZDcjliMzdPWmc3SlFvSFVrS0pHZnJBK2ppa0VxazJTalh3cz0=&1521473068)
Continue To Next Report Page ❯ (/reports/free-reviews-complaints-report/rating-breakdown.php?
make=chevrolet&model=colorado&year=2017)

 # VehicleHistory.com - Data Sources

- NMVTIS (Federal Government Salvage Database)
- Junk Yards
- Insurance Companies
- Salvage Yards

3/19/2018                                    2017 Chevrolet Colorado Rating Breakdown

- Manufacturers
- Car Dealerships
- Auto Recyclers
- Auto Auctions

- Law Enforcement Agencies
- Collision Repair Facilities

*All states are required by law to report this information

To share this report with others, copy and paste this link:

https://www.vehiclehistory.com/vehicle?bWphUSs4aWZDcjliMzdPWmc3SlFvSFVrS0p

Copy to clipboard

Click Here To Print Page
f Share on
Facebook (https://www.facebook.com/dialog/feed?
app_id=184683071273&link=https://www.vehiclehistory.com/vehicle?
bWphUSs4aWZDcjliMzdPWmc3SlFvSFVrS0pHZnJBK2ppa0VxazJTalh3cz0=&1521473068&picture=https://d3rdv3sa
compressed/stills_white_1280/MY2017/11442/11442_st1280_043.jpg&name=&caption=%20&description=&redirect_u
🐦 Share on
Twitter (https://twitter.com/home?
status=Vehicle%20History%20For%20VIN%201GCGTDEN7H1118585%202017%20Chevrolet%20Colorado%20https
bWphUSs4aWZDcjliMzdPWmc3SlFvSFVrS0pHZnJBK2ppa0VxazJTalh3cz0=&1521473068)
Continue To Next Report Page ❯ (/reports/free-reviews-complaints-report/rating-breakdown.php?
make=chevrolet&model=colorado&year=2017)
**NMVTIS Consumer Access Disclaimer**
The National Motor Vehicle Title Information System (NMVTIS) is an electronic system that contains information on
certain automobiles titled in the United States. NMVTIS is intended to serve as a reliable source of title and brand
(https://www.vehiclehistory.gov/nmvtis_glossary.html) history for automobiles, but it does not contain detailed
information regarding a vehicle's repair history.

All states, insurance companies, and junk and salvage yards are required by federal law to regularly report
information to NMVTIS. However, NMVTIS does not contain information on all motor vehicles in the United States
because some states (https://www.vehiclehistory.gov/nmvtis_states.html) are not yet providing their vehicle data to
the system. Currently, the data provided to NMVTIS by states is provided in a variety of time frames; while some
states report and update NMVTIS data in "real-time" (as title transactions occur), other states send updates less
frequently, such as once every 24 hours or within a period of days. Information on previous, significant vehicle
damage may not be included in the system if the vehicle was never determined by an insurance company (or other
appropriate entity) to be a "total loss" or branded by a state titling agency. Conversely, an insurance carrier may be
required to report a "total loss" even if the vehicle's titling-state has not determined the vehicle to be "salvage" or
"junk."

A vehicle history report is NOT a substitute for an independent vehicle inspection. Before making a decision to
purchase a vehicle, consumers are strongly encouraged to also obtain an independent vehicle inspection to
ensure the vehicle does not have hidden damage. The Approved NMVTIS Data Providers
(https://www.vehiclehistory.gov/nmvtis_vehiclehistory.html) (look for the NMVTIS logo) can include vehicle
condition data from sources other than NMVTIS.

3/19/2018                                                                 2017 Chevrolet Colorado Rating Breakdown

Before making a decision to purchase a vehicle, consumers may wish to obtain an independent vehicle inspection, a NMVTIS Vehicle History Report, and consult other available vehicle information resources.

NMVTIS data INCLUDES (as available by those entities required to report to the System):
Information from participating (https://www.vehiclehistory.gov/nmvtis_states.html) state motor vehicle titling agencies. Information on automobiles, buses, trucks, motorcycles, recreational vehicles, motor homes, and tractors. NMVTIS may not currently include commercial vehicles if those vehicles are not included in a state's primary database for title records (in some states, those vehicles are managed by a separate state agency), although these records may be added at a later time. Information on "brands" applied to vehicles provided by participating state motor vehicle titling agencies. Brand types and definitions vary by state, but may provide useful information about the condition or prior use of the vehicle.

Most recent odometer reading in the state's title record.
Information from insurance companies, and auto recyclers, including junk and salvage yards, that is required by law to be reported to the system, beginning March 31, 2009. This information will include if the vehicle was determined to be a "total loss" by an insurance carrier. Information from junk and salvage yards receiving a "cash for clunker" vehicle traded-in under the Consumer Assistance to Recycle and Save Act of 2009 (CARS) Program.

Consumers are advised to visit www.vehiclehistory.gov (https://www.vehiclehistory.gov/) for details on how to interpret the information in the system and understand the meaning of various labels applied to vehicles by the participating state motor vehicle titling agencies. NMVTIS data in this report has been obtained from VinAudit Inc., an Approved NMVTIS Data Provider

NEXT >
(/reports/free-
reviews-complaints-
report/rating-
breakdown.php?
make=chevrolet&model=

Data provided by        DATAONE (https://www.dataonesoftware.com/)
                        SOFTWARE

2018 VehicleHistory.com

**Terms of Service (/pages/terms.php)        Privacy Policy (/pages/privacy-policy.php)**

VehicleHistory.com provides you access to information from public databases. We do not add the data we provide into databases ourselves. The accuracy of any information in our database cannot be verified by us. There is the possibility of clerical errors made by government employees beyond our control. We cannot guarantee the completeness of any vehicle history report. You agree to access our data (which we are dependant on outside agencies for) at your own risk. For more information, check out our Terms of Service (/pages/terms.php). All images and content on our site is subject to copyright.

© 2018 VehicleHistory.com