**IN THE UNITED STATES DISTRICT COURT
FOR THE SOUTHERN DISTRICT OF OHIO
EASTERN DIVISION**

**JOHN C. RAYBURN,**

      **Plaintiff,**

                                        **Civil Action 2:18-cv-1534**

**v.**

                                        **Judge Edmund A. Sargus Jr.**

**SANTANDER CONSUMER USA
INC., et al.,**
                                        **Magistrate Judge Jolson**

      **Defendants.**

**PLAINTIFF'S UNOPPOSED MOTION FOR PRELIMINARY APPROVAL
OF CLASS ACTION SETTLEMENT AGREEMENT AND RELEASE,
CERTIFICATION OF THE SETTLEMENT CLASS, APPOINTMENT OF
PLAINTIFF'S COUNSEL AS CLASS COUNSEL AND APPROVAL OF
PLAN OF NOTICE, AND MEMORANDUM IN SUPPORT**

## I. INTRODUCTION

Plaintiff John Rayburn and Defendant Santander Consumer USA Inc. ("SC") have

reached a proposed class action settlement to resolve this portion of the case. A copy of the

proposed Settlement Agreement and Release  ("Settlement Agreement" or "Settlement"), is

attached as Exhibit A. Attached to the Settlement Agreement  are the following documents:

Exhibit 1-A - Mail Notice; Exhibit 1-B - Notice of Proposed Settlement of Class Action;

Exhibit 2 – Preliminary Approval Order; and Exhibit 3 – Final Approval Order.

As set forth more fully below, the Settlement provides for approximately

$333,000,000.00 in debt relief to Settlement Class Members and Settlement Class Members

whose repossessed vehicles were sold by SC and who made payments in excess of $100.00

to SC after repossession will be entitled to a cash benefit equal to a pro rata share of

$1,900,000.00. Additionally, SC has agreed to cease providing further adverse credit

information on the consumer reports of Settlement Class Members, and to request that credit reporting agencies delete any such adverse information.

Upon final approval, checks will be mailed automatically to Settlement Class Members who are entitled to payment and no claim forms are required. The value of the benefits provided by this Settlement to the Settlement Class exceeds $335 million, including cash payments and abandoned deficiency balances. The deletion of adverse credit reporting has a significant value that approaches value of the deficiencies waived. As will be demonstrated below, the Settlement negotiated by the parties is fair, adequate, and reasonable, and this Court should grant preliminary approval.

## II.     STATEMENT OF THE CASE

### A. Legal Background

This consumer class action alleges that SC failed to provide statutorily mandated disclosures after it repossessed vehicles from Ohio consumers. Specifically, Plaintiff's First Amended Class Action Complaint ("Complaint") asserts claims against SC under CSPA, RISA, and the OUCC on behalf of similarly situated Ohio residents related to notices sent to consumers in connection with the repossession of their vehicles, as well as a breach of contract claim.

### B. Statement Of The Claims And Defenses

Plaintiff's claims are premised on standard forms SC allegedly used in post-repossession notices, for the six (6) years preceding the filing of the instant action through to on or about September 5, 2018, pursuant to his UCC and RISA claims, and the statutory requirements therein which he alleges that SC violated. Under the UCC, R.C. §1309.613(A)(1)(e), a post repossession notice must state the time and place of a public sale. R.C. §1309.613(A)(1)(d) requires a statement that the debtor is entitled to an accounting of the

2

unpaid indebtedness and disclosure of the charge, if any, for an accounting. RISA, R.C. §1317.16(B), requires a public sale only, and requires disclosure of the minimum price, where the purchase was pursuant to a consumer installment contract. R.C. §1309.625(C)(2) provides that if the secured party fails to comply with the statutory requirements for disposition, the consumer borrower may recover "an amount not less than the credit service charge plus ten percent of the principal amount of the debt or the time-price differential plus ten percent of the cash price." SC asserts that RISA and the UCC provisions at issue also defeated any deficiency balances.

In addition to damages, the Complaint seeks a declaration that SC's acts and practices, namely, its alleged violations of the UCC and RISA, are unlawful. The Complaint also seeks an injunction to prohibit SC from continuing to engage in these practices and requiring that SC remove adverse credit information previously reported to credit reporting organizations, waiver of deficiency balances of class members, as well as attorneys' fees, costs and expenses.

SC denies that its notices were defective, denies that it violated the UCC, RISA, or any other provision of law, and among other defenses, challenged the appropriateness of this case for class treatment.

## III. THE TERMS OF THE SETTLEMENT

The parties' Settlement Agreement is attached as Exhibit A hereto. The material terms include the following:

### A. Class Definitions

"Class" means every Ohio resident who: (1) purchased a motor vehicle during the period from January 1, 2013 to the date the Court certifies and finally approves the class; (2) as part of

the purchase transaction, entered into a RISC (retail installment sales contract) where the RISC was assigned to SC; (3) where SC repossessed the vehicle and sent, subsequent to the repossession, a "Notice of Our Plan to Sell Property" Letter; and (4) where the "Notice of Our Plan to Sell Property" Letter had a vehicle sale date that included the phrase "on or after."  The Class expressly excludes and any person who received a Deficiency Balance Waiver in connection with the State AG Actions and is not also a Cash Refund Eligible Settlement Class Member.  (Settlement §1.6).

"Class Member" or "Member of the Class" means a natural person who is a member of the Class according to the Class definition.  SC represents that there are approximately 49,003 Class Members.  (Settlement §1.8).

"Settlement Class" means the collective group of all of the Class Members who do not properly and timely exclude themselves from the Settlement, and thus means the collective group of all of the Class Members who will become bound by the Judgment when the Effective Date occurs. (Settlement §1.46)

"Settlement Class Member" or "Member of the Settlement Class" means any person who is a member of the Settlement Class.  (Settlement §1.47).

### B.  Economic Relief for Class Members

Under the Settlement Agreement, SC will provide the following financial relief to Settlement Class Members:[1]

- For all Settlement Class Members, SC will waive all Deficiency Balances, which total approximately $333,000,000.00 on their SC accounts;

- SC will pay $1,900,000.00 into a Settlement Fund for the benefit of the Settlement Class and for the purposes of implementing this Settlement, which will be used to

---

[1] The description of relief here is intended as a summary of the Settlement Agreement. Details of the relief are contained in the Agreement.

provide monetary relief to certain Settlement Class Members, as described below, and to pay an incentive payment to the Class Representative, as approved by the Court.  Settlement Class Members whose repossessed vehicles were sold by SC and who made payments in excess of $100 to SC after repossession will be entitled to a cash benefit equal to a pro rata share of the Settlement Fund after the Incentive Payment;

- SC will request the Credit Reporting Agencies Equifax, Experian, TransUnion and any other credit reporting agency to which SC reports to delete the reporting of the Settlement Class Members' Accounts that are the subject of this Action;

- SC shall pay the Settlement Administrator's costs associated with disseminating the Class Notice, setting up a Settlement Website, distributing funds, and any escrow, administrative and/or bank related fees and costs associated with the Settlement Administrator's duties, up to $65,000.

### C. Notice And Administration

Subject to this Court's preliminary approval of the Settlement, the Settlement Administrator, JND Legal Administration, shall mail the "Mail Notice" to identified members of the Settlement Class in accordance with the schedule contained in the Preliminary Approval Order, and the terms of the Settlement Agreement. The Settlement Administrator shall be responsible for Mail Notice (including data standardization and de-duplication of the Notice List including updating addresses through NCOA, reasonable efforts to update addresses for undeliverable notices, and printing and mailing the Class Notice), drafting and submitting the CAFA notice required by 28 U.S.C. § 1715, creating and hosting an informational website with downloadable forms (as necessary) and case information, deploying and operating an automated toll-free contact center, including Interactive Voice Response (which does not provide a live operator) to obtain documents and answer questions, distributing the Incentive Payment to the Class Representative, and distributing payments to Cash Refund Eligible Settlement Class

Members.  The Settlement Administrator shall also be responsible for additional tasks the Parties jointly agree are necessary to accomplish administration of the Settlement.

### D.  Incentive Payment

Subject to approval of this Court, SC will pay an incentive award to the Class Representative, John Rayburn in the amount of $10,000.00, payable from the Settlement Fund, for serving in the capacity of class representative. This award was negotiated only after a conditional agreement on relief to the class was reached.

### E.  Attorney's Fees and Expenses

The Settlement Agreement provides SC will pay up to $2,500,000 in Attorney's Fees and Expenses, as approved by the Court, to cover the attorney's fees and costs incurred by the Settlement Class through Class Counsel. The amount represents a very small fraction of the total value of relief to the class (less than 1%), and does not reduce the amounts payable to the Class as described above. This award was negotiated only after a conditional agreement on relief to the class was reached.

### F.  Identification of Class Members.

SC has represented that, to the best of its knowledge based on researching customer accounts, that the numbers and amounts described herein are based on readily available information. The Notice List is to be sent by SC's Counsel to the Settlement Administrator within sixty (60) days of the entry of Preliminary Approval.

### G.  Exclusions Objections and Final Approval

Each Class Member identified from SC's records will be sent a Mail Notice which includes a description of his or her right to elect not to be part of the Settlement Class and not to

be bound by the Settlement, if, within such time as is ordered by the Court and is contained in

the notice, the affected person mails an appropriate opt-out notice.

The Settlement Administrator will maintain a list of all requests for exclusion

and shall report the names and addresses of all such persons requesting exclusion to

counsel for SC and Class Counsel within seven (7) days prior to the Final Approval

Hearing.

### H. *Reverter Cy Pres* **Award**

150 days after the Distribution Date, the residue of the Settlement Fund, if any, up to

$65,000 shall revert to SC for reimbursement of Administrative Costs. Any residue remaining in

the Settlement Fund in excess of $65,000 shall be used to pay any Administrative Costs in excess

of $65,000 and any remainder shall be distributed to *cy pres* recipients to be agreed upon by the

Parties.

## IV. THE SETTLEMENT AGREEMENT SHOULD BE PRELIMINARILY APPROVED

This Settlement presented to the Court for preliminary approval represents a fair and

reasonable resolution of this dispute. It will provide substantial financial relief to Class

Members in the form of cash payments and the waiver of deficiency balances. Plaintiff requests,

with the assent of SC, that the Court enter the proposed Preliminary Approval Order certifying

the Settlement Class, preliminarily approving the Settlement, providing for notice to the class,

and scheduling the Final Approval Hearing. The proposed Preliminary Approval Order is

attached to the Settlement Agreement as Exhibit 2. The Proposed Order also sets suggested

deadlines for opt outs and objections.

### A. <u>The Standard For Preliminary Approval Of Settlement Agreements</u>

Approving class action settlements involves three steps:  (1) preliminary approval of the proposed settlement after submission to the court of a written motion; (2) notice of the settlement to all class members; and (3) a final settlement approval hearing where the court will consider whether the settlement is fair, adequate, and reasonable such that it should be approved.  Fed. R. Civ. P. 23(e); *Newberg on Class Actions* §13.1 (5th ed. 2019).

 "Preliminary approval of a proposed settlement is based upon the court's familiarity with the issues and evidence, as well as the arms-length nature of the negotiation prior to the proposed settlement, ensuring that the proposed settlement is not illegal or collusive." *In re Dun & Bradstreet Credit Servs. Customer Litig.*, 130 F.R.D. 366, 370 (S.D. Ohio 1990)

> In making a preliminary assessment of the fairness of the proposed settlement agreement, the Court's "intrusion upon what is otherwise a private consensual agreement negotiated between the parties to a lawsuit must be limited to the extent necessary to reach a reasoned judgment that the agreement is not the product of fraud or overreaching by, or collusion between, the negotiating parties, and that the settlement, taken as a whole, is fair, reasonable and adequate to all concerned."

*In re Inter-Op Hip Prosthesis Liab. Litig.*, 204 F.R.D. 359, 379 (N.D. Ohio 2001) (quoting *Officers for Justice v. Civil Serv. Comm'n of the City and County of San Francisco*, 688 F.2d 615, 625 (9th Cir. 1982) *cert. denied by* 459 U.S. 1217 (1983)).

Preliminary approval does not require an evidentiary hearing.  *Mars Steel Corp. v. Continental Illinois Nat. Bank & Trust Co. of Chicago*, 834 F.2d 677, 684 (7th Cir. 1987).  "A preliminary fairness assessment 'is not to be turned into a trial or rehearsal for trial on the merits,' for 'it is the very uncertainty of outcome in litigation and avoidance of wasteful and expensive litigation that induce consensual settlements.' Rather, the Court's duty is to conduct a threshold examination of the overall fairness and adequacy of the settlement in light of the likely

outcome and the cost of continued litigation." *In re Inter-Op Hip Prosthesis Liab. Litig.*, 204

F.R.D. at 379 (citation and quotation omitted).  "As part of this evaluation, the Court may not

second guess the settlement terms."  *Id.* at 379-80 (*citing Armstrong*, 616 F.2d at 315 ("judges

should not substitute their own judgment as to optimal settlement terms for the judgment of the

litigants and their counsel")).  "Moreover, when a settlement is the result of extensive

negotiations by experienced counsel, the Court should presume it is fair."  *Id.* at 380 (*citing

Williams v. Vukovich*, 720 F.2d 909, 923 (6th Cir. 1983)).

In evaluating the fairness of a proposed settlement, other Sixth Circuit Courts have cited

*Girsh v. Jepson*, 521 F.2d 153, 157 (3rd Cir. 1975).  The *Girsh* factors include:  (1) the strength

of plaintiff's case, both as to liability and damages; (2) the risk, expense, complexity, and likely

duration of further litigation; (3) the risk of maintaining class action status throughout the trial;

(4) the amount offered in settlement; (5) the extent of discovery completed, and the stage of the

proceedings; (6) the experience and views of counsel; (7) the reaction of the class members to

the proposed settlement; (8) the public interest; and (9) the ability of the defendants to withstand

a greater judgment.  *Girsh*, 521 F.2d at 157; *In re Inter-Op Hip Prosthesis Liab. Litig.*, 204

F.R.D. at 351; *see also UAW v. GMC*, 497 F.3d 615, 631 (6th Cir. 2007) (listing many of the

same factors).  The *Girsh* factors are not mandatory, and this Court is not required to consider

each factor and may consider other factors.  *See, e.g., In re AT & T Corp. Sec. Litig.*, 455 F.3d

160, 165 (3d Cir. 2006) ("The *Girsh* factors do not provide an exhaustive list of factors to be

considered when reviewing a proposed settlement."); *In re Prudential Ins. Co.*, 148 F.3d 283,

322-23 (3d Cir. 1998) (upholding district court's application of only two *Girsh* factors to

analysis of proposed settlement).

In this case, the proposed Settlement warrants the Court's preliminary approval. The Settlement is a fair, reasonable and adequate resolution of the claims asserted. The Settlement also provides significant economic relief to the Settlement Class Members, namely the abandonment of deficiency balances of more than $330 million, as well as cash payments to Class Members who made post-repossession payments in excess of $100.00.

The Settlement Agreement further provides that Class Counsel may apply for attorneys' fees, costs and expenses not to exceed $2,500,000 subject to this Court's approval of such award. This sum represents less than 1% of the total value that the Settlement provides to Class Members not including the value of having the negative trade line deleted from their credit reports. The incentive award to the class representative, John Rayburn, is appropriate, given the responsibilities he undertook and the scope of the relief to the class.

Thus, the Settlement Agreement provides Class Members meaningful relief, and in addition, is structured to provide Class Members the best notice possible so that they can make an informed decision about whether to participate. Class Members who do not opt out will be entitled to receive the relief provided in the Settlement Agreement without having to submit a claim form.

All of the other relevant factors also warrant the Court's approval. The Settlement Agreement was negotiated at arm's length by class counsel with substantial experience representing consumers in class actions and unfair business practices litigation. *See* Affid. of Dan Goetz, ¶¶8, 9("Goetz Affid.") and Affid. of Ronald Frederick, ¶¶ 5, 7,8, 10 ("Frederick Affid.") attached as Exhibits B and C.  Class Counsel conducted sufficient investigation to evaluate the merits of the case, and the value of potential recovery. Goetz Affid., ¶7; Frederick Affid., ¶ 9. The Settlement Agreement was reached after hard fought negotiations, including in person and

10

telephone mediation sessions conducted by an experienced mediator retired Judge Morton Denlow and numerous informal settlement discussions between counsel. Goetz Affid., ¶¶ 8,9; Frederick Affid., ¶ 10, 14. The result is a fair and reasonable Settlement that achieves significant monetary and nonmonetary relief and that will provide substantial benefits directly to class members. Goetz Affid., ¶ 8; Frederick Affid., ¶ 11.

## V.    THE SETTLEMENT CLASS IS APPROPRIATE FOR CERTIFICATION

Plaintiff requests, with SC's assent, that the Court provisionally certify a proposed Settlement Class for settlement purposes only. Such provisional class certification is appropriate at the preliminary approval stage where, as here, the proposed Settlement Class as it is defined in the parties' Settlement Agreement has not previously been certified by the Court and the requirements for certification are met. *Newberg, supra*, at § 13:16. The additional rulings sought on this motion — approving the form, content and distribution of Class Notice, and scheduling a formal fairness hearing — facilitate the settlement approval process, and are also typically made at the preliminary approval stage. *Newberg, supra*, at §§ 3.1, 13.13.

The purpose of provisional class certification is to facilitate distribution of notice of the terms of the proposed Settlement and the date and time of the final approval hearing to all Class Members. *See* Fed. Judicial Ctr., *Manual for Complex Litigation,* §§ 21.632, 21.633 (4th ed. 2019). Neither formal notice nor a hearing is required for the Court to grant provisional class certification; instead, the Court may grant such relief upon an informal application by the settling parties and may conduct any necessary hearing in Court or in chambers, at the Court's discretion. *Manual*, § 21.632.

Rule 23(a) provides that a party seeking class certification must establish: (1) the class is so numerous that joinder of all members is impracticable; (2) there are questions of law or fact

common to the class; (3) the claims or defenses of the representative parties are typical of the claims or defenses of the class; and (4) the representative parties will fairly and adequately protect the interests of the class. Fed. R. Civ. P. 23(a). "In order to obtain class certification, [a movant] must first satisfy Rule 23(a)'s requirements of numerosity, commonality, typicality, and adequacy of representation." *Coleman v. GMAC*, 296 F.3d 443, 446 (6th Cir. 2002). In addition, the class representative must satisfy one of the requirements of Rule 23(b): that (1) the prosecution of separate actions would create a risk of inconsistent judgments establishing incompatible standards of conduct for the party opposing the class or impairing the ability of other class members to protect their interests; or (2) the party opposing the class has acted on grounds generally applicable to the class; or (3) questions of law and fact predominate over individual questions and that a class action is superior to other available methods for the fair and efficient adjudication of the matter. Fed. R. Civ. P. 23(b)(1)-(3).

### A. **The Proposed Class Meets the Requirements of Rule 23(a)**

1. *Numerosity* There are approximately 49,000 Class Members. "[T]here is no strict numerical test for determining impracticability of joinder." *Golden v. City of Columbus*, 404 F.3d 950, 965 (6th Cir. 2005), (*quoting Am. Med. Sys., Inc.,* 75 F.3d at 1079) (internal quotation marks omitted); *Basile v. Merrill Lynch, Pierce, Fenner & Smith, Inc*., 105 F.R.D. 506 (S.D. Ohio 1985) (as few as 23 class members may be sufficient); *see also Warner v. Waste Management, Inc*., 36 Ohio St. 3d 91, 97 (1988) (noting that classes with as few as 40 members satisfy the numerosity requirement).  Without doubt, a class that consists of 49,000 Class Members satisfies the numerosity requirement.

2. *Commonality* There are questions of law or fact common to the proposed class. Rule 23(a)(2). Commonality is satisfied if there is a single issue common to all class members;

12

"every question of law or fact need not be common to each class member." *Ames v. Robert Bosch Corp.*, 2009 U.S. Dist. LEXIS 25671 (N.D. Ohio March 24, 2009), *citing, Baby Neal for and by Kanter v. Casey*, 43 F.3d 48, 56- 57 (3rd Cir. 1994); *Moore v. Rohm & Haas Co., 43 Employee Benefits Cas.* 1337, 1342 (N.D. Ohio Nov.19, 2007); *In re American Medical Systems, Inc.,* 75 F.3d 1069, 1080 (6th Cir. 1996). ("[t]he commonality test, is qualitative rather than quantitative, that is, there need be only a single issue common to all members of the class."). *See also Prater v. Ohio Educ. Ass'n.*, No. C2 04 1077, 2008 WL 2566364, at *3 (S.D. Ohio June 26, 2008) (finding that even a single common question of law or fact will satisfy the commonality requirement). The claims of the proposed Settlement Class all arise out of the same common nucleus of facts, and raise the exact same legal issues. All Class Members had their cars repossessed by SC and received the same or substantially the same post-repossession notices. The Settlement Class presents no disparate questions of law or fact that would affect the claims of class members. The Settlement Agreement provides for uniform treatment of class members' claims. Under these circumstances, the commonality requirement is satisfied.

   **3.** **_Typicality_** The proposed class representative's claims are typical of those of the class. Rule 23(a)(3). A class representative must have claims that are typical of those of other members of the proposed class. *Senter v. General Motors Corp.,* 532 F.2d 511 (6th Cir. 1976). Typicality is met where the class representative's interests are not antagonistic to those of the class, there is a common question of fact or law, and the class representative is a member of the class. *Id.* at 525. Class Representative Rayburn meets this requirement. He is a member of the proposed Settlement Class, and does not have any express conflict with the class as a whole. He was subject to the same practices as all class members: his car was repossessed and he was

13

issued a post-repossession notice that contained the alleged deficiencies identified in the Complaint. His claims are typical, and he is able to represent the interests of the class.

*4.Adequacy Of Representation* Under Rule 23, adequacy of representation has two elements: adequacy of the named representative and adequacy of counsel. *Senter*, 532 F.2d at 525 ("1) the representative must have common interests with unnamed members of the class, and 2) it must appear that the representatives will vigorously prosecute the interests of the class through qualified counsel.") In determining adequacy of the class representative, the relevant consideration is "whether there is any antagonism between the interests of the [class claimants] and other members of the class they seek to represent." *Cross v. National Trust Life Ins. Co.*, 553 F.2d 1026, 1031 (6th Cir. 1977), *citing Eisen v. Carlisle & Jacquelin*, 391 F.2d 555, 562 (2d Cir. 1968). For the same reasons that his claims are typical, *supra*, Rayburn meets this requirement. Concerning the adequacy of counsel, Class Counsel have substantial experience representing consumers in complex class actions, and are qualified to conduct the litigation on behalf of the class. Goetz Affid., ¶ ¶3-6; Frederick Affid.,¶ ¶5-8. In addition, throughout this litigation, Plaintiff and his counsel have demonstrated their s commitment to vigorously prosecuting the case on behalf of the class. Here, the parties reached this settlement after prolonged negotiations conducted under the auspices of an experienced mediator and by direct negotiations between the parties. Goetz Affid., ¶ 9; Frederick Affid.,¶10. The adequacy requirement is met here.

## B. <u>The Proposed Class Meets the Requirements of Rule 23(b)(3)</u>

In addition to satisfying the prerequisites of Rule 23(a), the proposed class satisfies Rule 23(b)(3), which requires that the court find that "questions of law or fact common to the members of the class predominate over any questions affecting only individual members, and

that a class action is superior to other available methods for fairly and efficiently adjudicating the controversy." Fed. R. Civ. P. 23(b)(3). The Rule lists several factors that are relevant to this determination, which include: a) the interest of class members in controlling the prosecution of separate actions; b) the extent and nature of existing litigation concerning the controversy; c) the desirability of concentrating the litigation of the claims in a particular forum; and d) the difficulties likely to be encountered in the management of the class action.

This action satisfies both the standards and purpose of the Rule. As the Settlement Class is defined, there are no individual questions governing membership in the proposed Settlement Class. Certification of the Settlement Class will also eliminate the burden to the parties and class members of litigating disputed claims and will also conserve judicial resources. Therefore, the proposed Settlement Class is the most efficient means of resolving this litigation.

## VI. <u>CONCLUSION</u>

Without the class action device, this matter could not be litigated fairly and efficiently given the number of consumer accounts involved. A class action settlement is the best method for class members to obtain a remedy for the conduct that this case challenges. For the foregoing reasons, Plaintiffs respectfully requests that this Court approve the Settlement on a preliminary basis and certify the proposed class. Upon preliminary approval, the following dates need to be established:

Final Approval Hearing Date: _____

Dates Triggered From Preliminary Approval and/or Final Approval Hearing Date:

- o   Mail Notice (Notice Mailing Date) must be mailed not more than sixty (60) days after approval of the Mail Notice and not less than ninety

(90) days before the date set by the Court for the Final Approval

Hearing:

o  The Objection Deadline shall be no earlier than thirty (30) days after the

   Notice Mailing Date and not later than fifteen (15) days prior to the Final

   Approval Hearing:

o  The Opt-Out Deadline shall be no earlier than thirty (30) days after the

   Notice Mailing Date and not later than fifteen (15) days prior to the Final

   Approval Hearing:

o  Class Counsel's Motion For Fees and Expenses shall be filed no later than twenty

   (20) calendar days prior to the Final Approval Hearing:

Respectfully submitted,

Dated:  October 1, 2020          By:     */s/Ronald Frederick*
                                         Ronald Frederick (0063609)
                                         Michael Berler (0085728)
                                         Frederick & Berler, LLC
                                         767 E. 185th St.
                                         Cleveland, Ohio  44119
                                         (216) 502-1055

                                         ronf@clevelandconsumerlaw.com
                                         mikeb@clevelandconsumerlaw.com

                                 By:     */s/ R. Eric Kennedy*
                                         R. Eric Kennedy (0006174)
                                         Daniel P. Goetz (0065549)
                                         1600 Midland Building
                                         101 West Prospect Avenue
                                         Cleveland, Ohio 44115
                                         (216) 781-1111
                                         Fax (216) 781-6747

ekennedy@weismanlaw.com
dgoetz@weismanlaw.com

*Counsel for Plaintiff John Rayburn*

## CERTIFICATE OF SERVICE

I hereby certify that on October 1, 2020, the foregoing was filed electronically.  Notice of this filing will be sent to all parties by operation of the Court's electronic filing system.  Parties may access this filing through the Court's system.

*/s/ R. Eric Kennedy*

*Counsel for Plaintiff John Rayburn*