IN THE UNITED STATES DISTRICT COURT
FOR THE SOUTHERN DISTRICT OF OHIO
EASTERN DIVISION

JOHN C. RAYBURN,

    Plaintiff,

v.

SANTANDER CONSUMER USA INC., et al.,

    Defendants.

Civil Action 2:18-cv-1534

Judge Edmund A. Sargus Jr.
Magistrate Judge Jolson

**PLAINTIFFS' MOTION AND MEMORANDUM IN SUPPORT OF
CLASS COUNSELS' REQUEST FOR AN AWARD OF
ATTORNEY FEES AND EXPENSES**

## I. INTRODUCTION

Plaintiff John Rayburn and Defendant Santander Consumer USA Inc. ("SC") reached a class action settlement ("Settlement Agreement")[1] that provides in excess of $335,000,000 in financial benefits to Settlement Class Members. Additionally, the Settlement provides that SC will pay up to $2,500,000 in Attorneys' Fees and Expenses, as approved by the Court, to cover the attorneys' fees and costs incurred by the Settlement Class through Class Counsel. The amount represents a very small fraction of the total value of relief to the Class (less than 1%), and does not reduce any of the financial relief provided the Class that is described below. The attorneys' fees and expenses were negotiated only after a conditional agreement on relief to the Class was reached.

---

[1] Settlement Agreement And Release is found at Docket No. 50-1 filed on 10/2/2020.

The Fairness Hearing regarding the Settlement is scheduled for April 5, 2021.

**II.     STATEMENT OF FACTS**

This consumer class action alleges that SC failed to provide statutorily mandated disclosures after it repossessed vehicles from Ohio consumers. Specifically, Plaintiff's First Amended Class Action Complaint ("Complaint") asserts claims against SC under the CSPA, RISA, and the UCC, on behalf of similarly situated Ohio residents, related to notices sent to consumers in connection with the repossession of their vehicles, as well as a breach of contract claim.

Plaintiff's claims are premised on standard forms SC allegedly used in post-repossession notices for the six (6) years preceding the filing of the instant action pursuant to his UCC and RISA claims, and the statutory requirements therein which he alleges that SC violated. Under the UCC, R.C. §1309.613(A)(1)(e), a post repossession notice must state the time and place of a public sale.  R.C. §1309.613(A)(1)(d) requires a statement that the debtor is entitled to an accounting of the unpaid indebtedness and disclosure of the charge, if any, for an accounting. RISA, R.C. §1317.16(B), requires a public sale only, and requires disclosure of the minimum price, where the purchase was pursuant to a consumer installment contract. R.C. §1309.625(C)(2) provides that if the secured party fails to comply with the statutory requirements for disposition, the consumer borrower may recover "an amount not less than the credit service charge plus ten percent of the principal amount of the debt or the time-price differential plus ten percent of the cash price."

In addition to damages, the Complaint seeks a declaration that SC's acts and practices, namely, its alleged violations of the UCC and RISA, are unlawful. The Complaint also seeks an injunction to prohibit SC from continuing to engage in these practices and requiring that SC

remove adverse credit information previously reported to credit reporting organizations, waiver of deficiency balances of class members, as well as provision of attorneys' fees, costs and expenses.

SC denies that its notices were defective, denies that it violated the UCC, RISA, or any other provision of law, and among other defenses, challenged the appropriateness of this case for class treatment.

### III. FINANCIAL RELIEF TO SETTLEMENT CLASS MEMBERS

The financial benefits to Settlement Class Members[2] are in excess of $335 million. Specifically, those benefits include the following:

- For all Settlement Class Members, SC will waive all Deficiency Balances[3] on their SC accounts, which total approximately $333,000,000.00.[4]

- SC will pay $1,900,000.00 into a Settlement Fund which will be used to provide monetary relief to certain Settlement Class Members, as described below, and to pay an incentive payment to the Class Representative, as approved by the Court. Settlement Class Members whose repossessed vehicles were sold by SC and who made payments in excess of $100 to SC after repossession will be entitled to a cash benefit equal to a pro rata share of the Settlement Fund after the Incentive

---

[2] Settlement Class Members means all Class Members who do not exclude themselves from the Settlement. Settlement Agreement, ¶1.46 -1.47. (P. 12 – 13). Class Member is defined as every Ohio resident who: [(1)] purchased a motor vehicle; (2) as part of the purchase transaction, entered into a RISC where the RISC was assigned to SC; (3) where, during the period of January 1, 2013 to the date the Court certifies and finally approves the class for settlement purposes only, SC repossessed the vehicle and sent, subsequent to repossession, a "Notice of Our Plan to Sell Property" Letter; and (4) where the "Notice of Our Plan to Sell Property" Letter had a vehicle sale date that included the phrase "on or after." (DC Docket Nos. 56, 57).

[3] "Deficiency Balance" means "the Account balance remaining after the repossession and disposition of a Settlement Class Member's vehicle, after crediting the Class Member's account with the sale price of the vehicle and including all interest and other charges." Settlement Agreement, ¶1.15. (P. 8) The Deficiency Balance is the unpaid loan balance that is owed by the Settlement Class Member.

[4] Settlement Agreement, ¶Q.i. (P. 4).

3

    Payment.[5,6]  The total payments made by Settlement Class Members after repossession is approximately $5,720,000.[7]

- SC will request the Credit Reporting Agencies Equifax, Experian, TransUnion and any other credit reporting agency to which SC reports to delete the reporting of the Settlement Class Members' Accounts that are the subject of this Settlement.[8]

- SC shall pay the Settlement Administrator's costs associated with disseminating the Class Notice, setting up a Settlement Website, distributing funds, and any escrow, administrative and/or bank related fees and costs associated with the Settlement Administrator's duties, up to $65,000.[9]

## IV.  AWARD OF ATTORNEYS' FEES

### A. Introduction

The Settlement Agreement provides SC will pay up to $2,500,000 in Attorneys' Fees and Expenses[10], as approved by the Court, to cover the attorneys' fees and costs incurred by the Settlement Class through Class Counsel.[11] The amount represents a very small fraction of the total value of relief to the class (less than 1%), and does not reduce the amounts payable to the Class as described above. This award was negotiated only after a conditional agreement on all of the financial relief and benefits to Settlement Class Members was negotiated.

This Court must approve the fees and expenses to be paid to Class Counsel to exercise its supervisory role in a class action to protect the interests of the absent Class Members who are not individually involved in the outcome. The court's role is to protect the interests of the class

---

[5] Settlement Agreement, ¶Q.ii-iii (P.4).

[6] The Incentive Payment shall not exceed $10,000. Settlement Agreement, ¶5.2 (P. 25).

[7] Settlement Agreement, ¶3.34 (P. 21).

[8] Settlement Agreement, ¶Q.iv (O. 4); ¶3.4 (P. 21).

[9] Settlement Agreement, ¶Q.iv. (P. 4)

[10] Class Counsel incurred total expenses in this matter of $16,468.32. *See* Declaration of Ron Frederick, Ex. A and Declaration of Daniel P. Goetz, Ex. B.

[11] Settlement Agreement, ¶¶ 15.1-15.6 (P. 38-39).

members, and to ensure that the class members are not being overcharged. *Stumpf v. Pyod, LLC*, unreported at 2013 WL 6123156 (N.D. Ill. 2013). Where, as here, the attorneys have achieved an extraordinary outcome for the Settlement Class, and where the payment of the requested attorneys' fees will take nothing from the Settlement Class, the court's protective role logically diminishes.

### B. The Common Benefit Doctrine

For over a century, the Supreme Court has recognized the "common fund" exception to the general rule that a litigant bears his or her own attorneys' fees. *Trs. v. Greenough*, 105 U.S. 527 (1882). The rationale for the common fund principle was explained in *Boeing Co. v. Van Gemert*, 444 U.S. 472, 478 (1980) as follows:

> [T]his Court has recognized consistently that a litigant or a lawyer who recovers a common fund for the benefit of persons other than himself or his client is entitled to a reasonable attorney's fee from the fund as a whole…. Jurisdiction over the fund involved in the litigation allows a court to prevent … inequity by assessing attorney's fees against the entire fund, thus spreading fees proportionately among those benefited by the suit.

An attorney who produces a benefit or "common fund" is entitled to reasonable compensation. *See generally* 19 Ohio Jur. 3d, Costs in Civil Actions, § 41 (2003) (*citing In re Southern Ohio Correctional Facility,* 173 F.R.D. 205 (S.D. Ohio 1997) ("[T]he court must ensure that class counsel are fairly compensated for the amount of work done as well as the results achieved, and the court must provide a concise, clear explanation of the reasoning for adopting a particular methodology and the factors considered at arriving at the fee."); *In re Dun & Bradstreet Credit Services Customer Litig.,* 130 F.R.D. 366, 372 (S.D. Ohio 1990) ("It is well-settled that an attorney who recovers a common fund for the benefit of a class of persons in commercial litigation is entitled to reasonable attorneys' fees and expenses payable from that fund.") (*citing Blum v. Stenson,* 465 U.S. 886, 900 n.16 (1984); *Boeing,* 444 U.S. at 478-79;

*Mills v. Electric Auto-Lite Co.,* 396 U.S. 375, 391-92 (1970); *Smillie v. Park Chemical Co.,* 710 F.2d 271, 275 (6th Cir.1983).

This rule is often described more precisely in the jurisprudence as the "common fund" or "common benefit" doctrine and provides that "a litigant or lawyer who recovers a common fund for the benefit of persons other than himself or his client is entitled to a reasonable attorney's fee from the fund as a whole." *Boeing,* 444 U.S. at 478. The court considers the attorneys' fee not to abstractly referee the amount of the fee, but rather, in part, to assess how the fee affects the recovery of absent class members.  This is because, in many cases, the client's recovery is reduced by the attorney's fee.  That concern is absent here.

### C.  The Percentage Methodology Is The Appropriate Methodology

In determining a reasonable fee in common benefit cases, the preferred method is to award a percentage of the benefit.  "While district courts generally have discretion to apply either the percentage of the fund or the lodestar method in calculating fee awards … the Sixth Circuit has observed a 'trend towards adoption of a percentage of the fund method in [common fund] cases'." *Stanley v. United States Steel Co.,* unreported at 2009 U.S. Dist. Lexis 114065 at *3-4 (E.D. Mich., 2009). (Internal citations omitted).  "In the Sixth Circuit, it is within the discretion of the district court to decide which method to use in a given case.  The percentage-of-the-fund method, however, clearly appears to have become the preferred method in common fund cases." *Sweetwater Valley Farm, Inc. v. Dean Foods Co.,* unreported at 2018 U.S. Dist. Lexis 131855 at *13 (E.D. Tenn., 2018) (Internal citations omitted).  *See also Blum v. Stenson*, 465 U.S. 886, 900 n.16 (1984) (stating that in common fund cases "a reasonable fee is based on a percentage of the fund bestowed on the class."); *Sprague v. Ticonic Nat'l. Bank*, 307 U.S. 161, 165-166 (1939); *Cent. R.R. & Banking Co. v. Pettus*, 113 U.S. 116, 124-125 (1885).  The fact that attorney fees

are being paid separately by the Defendant does not change the applicability of the common fund approach.

> Although this case is not precisely a common fund case (as the funds going to pay for attorneys' fees and expenses are to be paid under the Settlement Agreement separate and apart from the money that goes directly to the class members), nonetheless, the common fund analysis properly applies. *Arledge*, 2018 U.S. Dist LEXIS 179474, 2018 WL 5023950, *3; *Merkner v. AK Steel Corp.*, No. 1:09-cv-423, 2011 U.S. Dist. LEXIS 157375, 2011 WL 13202629, at *1 (S.D. Ohio Jan. 10, 2011). The Court finds that the percentage approach is proper in this case.

*Mullins v. S. Ohio Pizza, Inc.*, unreported at 2019 U.S. Dist. Lexis 11019 at *10 (S.D. Ohio, 2019)

Nationally, the percentage methodology is overwhelmingly favored over the lodestar method.  A study that analyzed all class action settlements in federal court for 2006 and 2007 found that of the 688 settlements reviewed, the percentage of the fund method was used 69% of the time, the lodestar method was used only 12%, and in the remaining cases, the method was not stated or a different method was used.  Brian Fitzpatrick, *An Empirical Study of Class Action Settlements and Their Fee Award,* 7. J. Emp. Leg. Stud. 811 (December, 2010).

A percentage methodology also most closely matches the manner in which attorneys are customarily compensated in the marketplace for contingency representation.  As Judge Richard Posner of the Seventh Circuit has reasoned, "the object in awarding a reasonable attorneys' fee ... is to give the lawyer what he would have gotten ... in an arms length negotiation, had one been feasible."  *Matter of Continental Illinois Sec. Litig.,* 962 F.2d 566, 572 (7th Cir. 1992).  The percentage method furthers this objective of awarding Class Counsel the fee they would have received had they handled a similar suit on a contingency fee basis for a paying client; thereby, more accurately reflecting the economics of litigation practice.  *See Gaskill v. Gordon* 160 F.3d 361, 363 (7th Cir. 1998).  The percentage of the benefit approach also aligns counsel's incentives

7

with those of their clients, rewarding results achieved as opposed to hours logged. *Kirchoff v. Flynn*, 786 F.2d 320, 325 (7th Cir. 1986) ("The lawyer gains only to the extent his client gains.").

The percentage of the benefit methodology should be used in this case.

### D.  The Size Of The Benefit For Purposes Of Calculating A Percentage Of The Fund

The next step in evaluating the fee is determining the amount to which the percentage should apply. The common benefit created by this litigation has four significant components:

First, the debt forgiveness benefit provided by SC waiving Deficiency Balances is to be considered as part of the common fund. *Rocca v. Wilke*, 53 Ohio App. 2d 8, 10 (1st App. Dist. 1977) (Trial court properly included credits to taxpayer accounts in calculating the total amount of the common fund); *Gascho v. Global Fitness Holdings, LLC.*, 822 F.3d 280, (6th Cir. 2016)

> When conducting a percentage of the fund analysis, courts must calculate the ratio between attorney's fees and benefit to the class. Attorney's fees are the numerator and the denominator is the dollar amount of the Total Benefit to the class . . . To reach a resolution satisfactory to all parties, litigants may agree to cash and noncash settlement components. Calculating the ratio between attorney's fees and benefit to the class must include a method for setting the denominator that gives appropriate consideration to all components that the parties found necessary for settlement. . .

Likewise, in *Cosgrove v. Citizens Auto. Fin., Inc.*, No. CIV.A. 09-1095, 2011 WL 3740809, at *7 (E.D. Pa. Aug. 25, 2011), a case almost identical to this one, involving vehicle repossessions and post-repossession notices that violated state law, the court noted that "debt forgiveness provides a valuable award to class members." The court then went on to find that: "$1.25 million in attorneys' fees, which represents approximately 11.7% of the settlement fund, including debt relief. . . is reasonable." *Id.* at *8.

8

Second, the value of the credit repair is significant.  Although not calculated for purposes of this Motion, as it is not necessary to support the fee request, it is an important element of this Settlement.

Third, the payment being made to the Settlement Fund in the amount of $1,900,000 should be considered in calculating the common benefit provided to the Class.

Fourth, the attorney fee paid to Class counsel is to be considered part of the common benefit.  *See*, *e.g.*, *Johnston v. Comerica Mortg. Corp.*, 83 F.3d 241, 246 (8th Cir. 1996) ("Even if the fees are paid directly to the attorneys, those fees are still best viewed as an aspect of the class' recovery.")

For the purposes of the percentage fee calculation, counsel proposes that the common benefit be considered to be $335 million, despite the fact that the actual benefit is significantly larger since the above number does not capture the credit repair value which is substantial.

### E. The Requested Fee Percentage Is Within The Range Of What Courts Have Found To Be Fair and Reasonable

The foregoing discussion has covered how fees are properly awarded in class action common benefit cases (by percentage) and what constitutes the total benefit.  The final issue is the correct percentage to use.  In this matter, if the Court awards the amount sought by Class Counsel, it will not reduce the benefit being provided to any Settlement Class Member.

Counsel has requested an attorney fee that is less than 1% of the common benefit. There are (6) factors that are commonly considered to determine reasonableness of the requested fee. Understanding that these factors are subjective and not amenable to precise mathematical calculations, courts have looked to other cases as a critical starting point in determining an appropriate percentage award.

9

Tens of thousands of settlements can be cited by Class Counsel in which the fee awards were far in excess of 1% of the common benefit sought in this matter. Recent case law from the Southern District of Ohio recognized that the average fee award in the Sixth Circuit was typically between 20 to 50 percent of the common fund.

> Under either calculation, whether 24.47% or 33%, this Court finds Plaintiff's request is reasonable and within the ranges of fees typically approved by courts in the Sixth Circuit. *See In re Broadwing, Inc. ERISA Litig.,* 252 F.R.D. 369, 380-81 *(S.D. Ohio 2006)* ("Attorneys fees awards typically range from 20 to 50 percent of the common fund") (collecting cases); *In re Telectronics Pacing Sys., Inc.,* 137 F. Supp. 2d 1029 (S.D. Ohio 2001) ("the range of reasonableness ... has been designated as between twenty to fifty percent of the common fund"); *In re S. Ohio Corr. Facility,* 173 F.R.D. 205, 217 (S.D. Ohio 1997), rev'd on other grounds, 24 F. App'x 520 (6th Cir. 2001) ("[t]ypically, the percentage awarded ranges from 20 to 50 percent of the common fund").

*Mullins*, 2019 U.S Dist. Lexis 11019 at *11.

Similarly, in a study of 688 class action settlements by Brian Fitzpatrick, *An Empirical Study of Class Action Settlements and Their Fee Award*, 7. J. Emp. Leg. Stud. 811 (December, 2010), the researchers found a median fee award of 25%. This means that half of the settlements had fees over 25% with most between 25-35%. *Id.* Even when the court was required to conduct the balancing by application of the relevant factors, they commonly awarded fees between 25-35%. The median fee award in the Sixth Circuit was reported to be 28%. *Id.* The study also noted that the Ninth Circuit has a presumptive starting point of 25% and then moves up or down after application of the relevant factors to each case. In 2010, Theodore Eisenberg and Geoffrey Miller published an article in which they examined attorney fee awards from a comprehensive class action case data set covering the period of 1993-2008. *See Attorney Fees In Class Action Settlements: 1993-2008.* Theodore Eisenberg & Geoffrey Miller, *Attorney Fees In Class Action Settlements: 1993-2008,* 7 J. Empirical Legal Stud. 248, (2010). The usefulness of the data analysis for courts deciding a fee petition was summarized by the authors as follows:

> The present empirical study is intended to assist courts in the task of fee setting – and counsel in the task of identifying appropriate fees to request – by supplying an accounts of compensation practices in courts across the country, studied over an extended period of time, and conducted in an academic setting outside the fires of litigation. The information provided in this article is the best data on "awards in similar cases" from cases with available opinions. If used effectively, our study may be of material assistance in further rationalizing the compensation of class counsel.

*Id*. at 250.

According to the study and the data from published opinions, the mean fee award for cases with class benefits in excess of $175.5 million was 12% of the fund and the median was 10.2% of the fund. *Id*. at 265. The national data, coupled with the fact that in the Sixth Circuit the average fee award is between 20 to 50% with a median of 28%, demonstrates that Counsels' request, which is less than 1% of the Settlement benefits, is reasonable.

**F. The Fee Request Is Supported By The Relevant Factors**

Courts will sometimes also look to six factors to determine the appropriate percentage to award as attorneys' fees from a common fund:

- the value of the benefit rendered to the class;
- society's stake in rewarding the attorneys who produce such benefits in order to maintain an incentive to others;
- whether the services were undertaken on a contingent fee basis;
- the value of the services on an hourly basis;
- the complexity of the litigation; and
- the professional skill and standing of all counsel.

*Ramey v. Cincinnati Enquirer, Inc.*, 508 F.2d 1188, 1196 (6th Cir., 1974). Ultimately however, the standard applied to determine the percentage awarded is reasonableness under the circumstances of a particular case. *Blum*, 465 U.S. at 900; *Bowling v. Pfizer, Inc.*, 102 F.3d 777,

11

779 (6th Cir. 1996) (stating that an "award of attorneys' fees in common fund cases need only be 'reasonable under the circumstances'").

- ***The Value Of The Benefit Provided To The Class Is Substantial***

The first factor courts look to is the class benefit created by the efforts of counsel. As shown above, the common benefit provided to the Settlement Class is in excess of $335 million. This is a substantial recovery for a case such as this.

- ***Society Has A Stake In Adequately Compensating Class Counsel To Maintain An Incentive For Attorneys To Pursue Such Matters***

Establishing an appropriate fee for Class Counsel takes into account the societal goal of encouraging attorneys to take on legitimate claims that would never be asserted without the class action device. *In re Weisbrod,* 138 B.R. 869, 874 (Bkrtcy. S.D. Ohio 1992). *See, e.g., Dolgow v. Anderson*, 43 F.R.D. 472, 487, 494 (E.D.N.Y. 1968) (rev'd other grounds) ("Every successful suit duly rewarded encourages other suits to redress misconduct and by the same token discourages misconduct which would occasion suit.") (Internal citation omitted).

Judge Kathleen J. O'Malley, a current Circuit Judge for the United States Court of Appeals for the Federal Circuit, outlined, while a District Court Judge in the Northern District of Ohio, the necessity of encouraging counsel, through attorney fee awards, to undertake this type of litigation.

> …[O]ne of the fundamental principles of class action litigation is that it provides an incentive to pursue recovery for tortious conduct that would otherwise go unchecked because the individual harm to a plaintiff is too small to justify the cost of litigation. Collective action is the best, and, in many cases, the only feasible, way to redress the harm on an individual basis and discourage similar conduct in the future. Of course, class actions depend on class counsel – that is why the Court's duty to ensure that class counsel is fairly compensated under the circumstances is such an important part of the Court's Rule 23(e) responsibilities.

*Lonardo v. Travelers Indem. Co*, 706 F. Supp. 2d at 791 (2010 U.S. Dist. Lexis 33180).  *See also In re Tyco, Int'l.* 535 F.Supp.2d 249, 270 (D.C.N.H. 2007) (Internal citations omitted) ("Without a fee that reflects the risk and effort involved in this litigation, future plaintiffs' attorneys might hesitate to be similarly aggressive and persistent when faced with a similarly complicated, risky case and similarly intransigent defendants. In order to attract well-qualified plaintiffs' counsel who are able to take a case to trial, and who defendants understand are able and willing to do so, it is necessary to provide appropriate financial incentives.)".  *In Re Visa Check/Mastermoney Antitrust Litig.* 297 F.Supp.2d 503, 525 (E.D. NY 2003) (Attorney fees "must also serve as an inducement for lawyers to make similar efforts in the future").

Society has a unique interest in promoting lawyers to pursue similar litigation.  Without this litigation, the overwhelming majority of all of these relatively small claims would not have been pursued, and, in fact, as demonstrated by this case, many of these victims would have been subjected to inappropriate collection actions.  Society needs for lawyers to have every incentive to dedicate themselves to such cases.  It cannot afford to do otherwise.

- ***The Litigation Was Risk-Laden, And Class Counsel Undertook The Litigation On A Contingency Fee Basis***

The contingent nature of an attorney's representation is a factor courts consider in determining a fair and reasonable fee.  *See, e.g., In re Fernald Litig.,* unreported at 1989 WL 267038, at *3 (S.D. Ohio 1989) (noting that class counsel undertook significant risk, because "[i]f they had not negotiated a successful settlement or obtained a final judgment, they would receive no payment for their thousands of hours of services"); *Cherner v. Transitron Electric Corp.*, 221 F. Supp. 55, 61 (D. Mass. 1963) ("No one expects a lawyer whose compensation is contingent upon his success to charge, when successful, as little as he would charge a client who in advance had agreed to pay for his services, regardless of success.").  In *In re Checking*

13

*Account,* the Court noted that the significant risk in undertaking litigation without any guarantee of payment justified a 30% fee in the $400+ million settlement:

> Class counsel took on a great deal of risk in bringing this case, and turned a potentially empty well into a significant judgment. That kind of initiative and skill must be adequately compensated to insure that counsel of this caliber is available to undertake these kids of risky but important cases in the future.

*In re Checking Account (Torres),* 830 F. Supp. 2d 1359. (Internal citations omitted).

"Contingent fee arrangements reduce risk to clients *(see In re Estate of Johnson*, 899 N.E.2d 198, 203 (5th Dist. 2008)) and "serve an important function in American life" by "permit[ting] persons of ordinary means access to a legal system which can sometimes demand extraordinary expense." *Landis v. Grange Mut. Ins. Co.* 1997 Ohio App. Lexis 570 at *5 (6th Dist. 2007). Notably, however, contingency fee arrangements don't reduce the overall risk of the litigation, it just transfers an overwhelming portion of it to counsel.

Counsel undertook this matter on a contingent basis. Some Courts actually consider the contingent nature of the risk first and foremost when deciding what the ultimate percentage awarded should be and recognize that 33% to 40% is the standard rate for bearing such risk. See *Sutton v. Bernard*, 504 F.3d 688, 692 (7th Cir. 2007) holding that attorneys' fees should be set by "the market price for legal services, in light of the risk of nonpayment and the normal rate of compensation in the market at the time." The risk associated with the case is a paramount consideration because class counsel in cases such as this accept the risk of not only non-payment, but also the risk of a financial loss (no one steps up to reimburse class counsel for the out-of-pocket expenses if the case is unsuccessful).

It is also beyond real dispute that attorneys who accept contingent fee arrangements in large complex cases, with a substantial risk of non-payment and where the attorneys are advancing and carrying for years all of the litigation expenses, generally do not accept the

engagement for less than a contingent fee of between 30 and 40 percent. *Will v. General Dynamics Corp.,* No. 06–cv–698–GPM, 2010 WL 4818174, at *2 (S.D.Ill. Nov. 22, 2010) ("[w]here the market for legal services in a class action is only for contingency fee agreements, and there is a substantial risk of nonpayment for the attorneys, the normal rate of compensation in the market is 33.33% of the common fund recovered."); *City of Greenville v. Syngenta Crop Protection, Inc.*, 904 F.Supp.2d 902 (2012) (awarding fees of one-third of a $105 million common fund, observing: "… a contingent fee of one-third of any recovery after the reimbursement of costs and expenses reflects the market price for legal services for a case of similar risk."); *Meyenburg v. Exxon Mobil Corp.*, No. 3:05-CV-15-DGW, 2006 WL 2191422, at *2 (S.D. Ill. July 31, 2006) (Awarding a fee of one-third of the common fund, observing: "The Court is independently aware that 33 1/3% to 40% (plus the cost of litigation) is the standard contingent fee percentages in this legal marketplace for comparable commercial litigation."); *Teamsters Local Union No. 604 v. Inter-Rail Transp., Inc.*, No. 02-CV-1109-DRH, 2004 WL 768658, at *1 (S.D. Ill. Mar. 19, 2004)("… a fee award of thirty-three and one-third (33 1/3%) in a class action is not uncommon."); *Goldsmith v. Tech. Solutions Co.*, 1995 WL 17009594, at *8 (N.D. Ill. Oct. 10, 1995) ("Thirty-three percent appears to be in line with what attorneys are able to command on the open market in arms-length negotiations with their clients.").

- ### *The Litigation Was Complex*

The next factor is complexity. Class actions are a complicated procedure tool. All are different. There is no single patterned approach to certification. Only after every element of Rule 23 is satisfied can a case proceed on a class-wide basis. Thereafter, certification is subject to appeal by the defendant, modification by the court, opt-outs and objection by class members. There is nothing simple about class action litigation. Further, the underlying nature of the

litigation (did the post-repossession forms violate Ohio law?) is not simple as SC is still maintaining that the forms used complied with Ohio law.

The negotiations and consultations between the parties, which included a mediation in Chicago conducted by retired Federal Judge Morton Denlow, initially reached an impasse. During the subsequent year after the mediation, the parties engaged in a series of attempts to resolve the case, with the prospect of further litigation remaining an option. Defendant provided Plaintiff with over 20,000 pages of discovery and the deposition discovery was beginning. In the end, both sides, recognized the perils of continuing the litigation and negotiated a settlement which they agree is in the best interests of their clients and satisfies the requisites of Rule 23.

- ***Class Counsel Applied Their Sophisticated Legal Skills To Prosecute And Resolve This Case***

The final factor is skill of the lawyers in handling the case. The Settlement alone proves this factor. Additionally, attached as Ex. A-1 is the resume of Frederick & Berler and attached as Ex. B-1 is the resume of Weisman, Kennedy & Berris.

**V.  CONCLUSION**

For all of the foregoing reasons, Class Counsel hereby requests that this Honorable Court award it attorneys' fees and expenses of $2,500,000.

Respectfully submitted,

Dated:  February 17, 2021    By:    */s/Ronald Frederick*
Ronald Frederick (0063609)
Michael Berler (0085728)
Frederick & Berler, LLC
767 E. 185th St.
Cleveland, Ohio  44119
(216) 502-1055
ronf@clevelandconsumerlaw.com
mikeb@clevelandconsumerlaw.com

By: */s/ R. Eric Kennedy*
R. Eric Kennedy (0006174)
Daniel P. Goetz (0065549)
1600 Midland Building
101 West Prospect Avenue
Cleveland, Ohio 44115
(216) 781-1111
Fax (216) 781-6747
ekennedy@weismanlaw.com
dgoetz@weismanlaw.com

*Counsel for Plaintiff John Rayburn and the Class*

## CERTIFICATE OF SERVICE

I hereby certify that on February 17, 2021, the foregoing was filed electronically. Notice of this filing will be sent to all parties by operation of the Court's electronic filing system. Parties may access this filing through the Court's system.

*/s/Ronald Frederick*
Ronald Frederick (0063609)
Frederick & Berler, LLC

*Counsel for Plaintiff John Rayburn*