IN THE UNITED STATES DISTRICT COURT
FOR THE SOUTHERN DISTRICT OF OHIO
EASTERN DIVISION

JOHN C. RAYBURN,

    Plaintiff,

v.

SANTANDER CONSUMER USA
INC., et al.,

    Defendants.

Civil Action 2:18-cv-1534

Judge Edmund A. Sargus Jr.
Magistrate Judge Jolson

**PLAINTIFF'S UNOPPOSED MOTION AND MEMORANDUM IN SUPPORT
FOR FINAL APPROVAL OF CLASS ACTION SETTLEMENT**

**I.    STATEMENT OF FACTS**

Plaintiff John Rayburn and Defendant Santander Consumer USA Inc. ("SC") reached a class action settlement ("Settlement Agreement")[1] that provides in excess of $355,000,000[2] in financial benefits to Settlement Class Members.

This consumer class action alleges that SC failed to provide statutorily mandated disclosures after it repossessed vehicles from Ohio consumers. Specifically, Plaintiff's First Amended Class Action Complaint ("Complaint") asserts claims against SC under the CSPA, RISA, and the OUCC, on behalf of similarly situated Ohio residents, related to notices sent to consumers in connection with the repossession of their vehicles. In addition the Complaint alleges a breach of contract claim.

---

[1] Settlement Agreement And Release is found at ECF 50-1 filed on 10/2/2020.
[2] In earlier pleadings the deficiency balances being waived was approximately $333 million. Due to the passage of time between preliminary approval and the date of this pleading, the current deficiency balances being waived is $355,625,942. This figure has been represented and warranted by the SC counsel as the current balance.

1

Plaintiff's claims are premised on standard forms SC allegedly used in post-repossession notices for the six (6) years preceding the filing of the instant action pursuant to his OUCC and RISA claims, and the statutory requirements therein which he alleges that SC violated. Under the OUCC, R.C. §1309.613(A)(1)(e), a post repossession notice must state the time and place of a public sale.  R.C. §1309.613(A)(1)(d) requires a statement that the debtor is entitled to an accounting of the unpaid indebtedness and disclosure of the charge, if any, for an accounting. R.C. §1317.16(B), requires a public sale only, and requires disclosure of the minimum price, where the purchase was pursuant to a consumer installment contract. R.C. §1309.625(C)(2) provides that if the secured party fails to comply with the statutory requirements for disposition, the consumer borrower may recover "an amount not less than the credit service charge plus ten percent of the principal amount of the debt or the time-price differential plus ten percent of the cash price."

In addition to damages, the Complaint seeks a declaration that SC's acts and practices, namely, its alleged violations of the OUCC and RISA, are unlawful. The Complaint also seeks an injunction to prohibit SC from continuing to engage in these practices and requiring that SC remove adverse credit information previously reported to credit reporting organizations, waiver of deficiency balances of class members, as well as provision of attorney's fees, costs, and expenses.

SC denies that its notices were defective, denies that it violated the OUCC, RISA, or any other provision of law, and among other defenses, challenged the appropriateness of this case for class treatment.

## II.  PROCEDURAL HISTORY

- This action began in Belmont County Court of Common Pleas when Mr. Rayburn filed an individual action against Staffilino Chevrolet, Anthony Staffilino and Santander Consumer USA, Inc. on September 5, 2018.

- On October 1, 2018, Staffilino Chevrolet, Inc. and Anthony Staffilino filed their *Answer to Plaintiff's Complaint*. On October 2, 2018, SC filed its *Answer to Complaint, Counterclaim Against Plaintiff, and Crossclaim Against Defendant Staffilino Chevrolet, Inc.*

- On October 15, 2018, Staffilino Chevrolet, Inc. filed its *Answer to Defendant SC's Crossclaim.*

- On October 23, 2018, Plaintiff filed his *Reply to SC's Counterclaim and First Amended Class Action Complaint*.

- On November 2, 2018, Defendants Staffilino Chevrolet, Inc. and Anthony Staffilino filed their *Answer to Plaintiff's First Amended Class Action Complaint*.

- On November 28, 2018, SC filed its *Notice of Removal* to the U.S. District Court

- On December 27, 2018, SC Filed its *Partial Motion to Dismiss First Amended Complaint* and it filed a *Partial Answer and Affirmative Defenses to First Amended Class Action Complaint*.

- On January 23, 2019, a Pretrial Conference was held, wherein the parties agreed to mediate the case privately .

- On February 14, 2019, Plaintiff filed a *Notice of Stipulated Dismissal of Plaintiff's First Claim for Relief "Only"* and on March 7, 2019, the Court declared *SC's Partial Motion to Dismiss* MOOT, in light of the Stipulated Dismissal.

- On May 20, 2019, Plaintiff and SC filed a *Joint Motion to Stay Litigation Pending Mediation*, which was GRANTED on May 22, 2019.

- On September 9, 2019, the parties completed a mediation before the Honorable Judge Morton Denlow (Ret.), *which was unsuccessful*.

- On September 23, 2019, the parties filed a *Status Report* with the Court apprising the Court of the unsuccessful mediation and requesting that the Court lift the stay and enter a new scheduling order, which was GRANTED by the Court on November 14, 2019.

- On March 5, 2020, the parties filed a *Joint Motion to Extend Case Schedule,* informing the Court that they were re-engaged in productive settlement discussions.

- On March 9, 2020, the parties filed a *Joint Status Report.*

- On April 9, 2020, the parties filed a *Joint Status Report*, informing the Court that Plaintiff had made a new settlement demand, and that SC had made a counteroffer, which Plaintiff was considering and preparing a response to (and that Judge Denlow had been re-engaged as an intermediary for the settlement discussions).

- On April 23, 2020, the case was reassigned from Judge George C. Smith to Judge Edmund A. Sargus, Jr.

- On or about July 9, 2020, the parties reached an agreement to settle the case on a class wide basis.

- On July 13, 2020, the parties filed a *Joint Stipulation and [Proposed] Order to Stay Case Pending Preliminary Approval of Proposed Class Settlement*, which was GRANTED on July 15, 2020.

- On October 1, 2020, Plaintiff filed an *Unopposed Motion for Preliminary Approval of Class Action Settlement Agreement and Release, Certification of the Settlement Class, Appointment of Plaintiff's Counsel as Class Counsel and Approval of Plan of Notice, and Memorandum in Support.*

- On October 28, 2020, the Court GRANTED *Plaintiff's Unopposed Motion for Preliminary Approval.*

- On November 5, 2020, the parties filed a *Joint Motion to Set Final Approval Hearing and to Clarify Class Definitions.*

- On November 12, 2020, the Court set a Final Fairness Hearing for April 5, 2021 at 9:30 a.m.

- On November 24, 2020, the parties filed a *Joint Motion to Modify Certain Deadlines for Class Notice and Settlement Fund in Settlement Agreement*, which was GRANTED on November 25, 2020.

- On December 17, 2020, the parties filed a *Joint Motion to Modify Class Definition and Deadlines for Class Notice,* which was GRANTED on January 12, 2021.

- On February 17, 2021, Plaintiff filed a *Motion and Memorandum in Support of Class Counsels' Request for an Award of Attorney Fees and Expenses.*

- On March 29, 2021 the Court granted the *Parties Joint Motion to Modify Class Definition and Approve Notice*.

**III.** **CERIFICATION OF THE SETTLEMENT CLASS REMAINS PROPER**

In the preliminary approval order, this Court determined that the Settlement Class satisfied the requirements of Rule 23(a) and (b)(3) and provisionally approved class

certification.[3] The Court also held that "it likely will approve class certification for settlement purposes at the final approval stage." *Id.* at p. 6. Although the class definition has been amended[4] these changes have no impact on the appropriateness of the certification. Lastly, no Class Members have objected to the certification or the Settlement.[5]

## IV. PRELIMINARY APPROVAL AND CLASS NOTICE

In the preliminary approval order, this Court held that the "proposed settlement appears fair, adequate and reasonable and is likely to meet the final approval requirements of Rule 23(e)(2).[6] The Court approved the plan of Notice and directed the Settlement Administrator to effectuate the Notice. *Id.* The Settlement Administrator effectuated the Notice.[7]

## V. TERMS OF THE CLASS ACTION SETTLEMENT

The financial benefits to Settlement Class Members[8] are in excess of $357 million. Specifically, those benefits include the following:

---

[3] Opinion And Order, ECF 51
[4] ECF 56, 57 and 60, 61.
[5] See Declaration of Jennifer M. Keough Regarding Dissemination of Notice And Administration of Settlement.
[6] Opinion And Order, ECF 51.
[7] *Id.*
[8] Settlement Class Members means all Class Members who do not exclude themselves from the Settlement. Settlement Agreement, ¶1.46 -1.47. (P. 12 – 13). Class Member is defined as every Ohio resident who: (a) Purchased a motor vehicle; (b) As part of the purchase transaction, entered into a RISC where the RISC was assigned to SC; (c) Where, during the period of January 1, 2013 to October 8, 2020, SC repossessed the vehicle and sent, subsequent to repossession, a "Notice of Our Plan to Sell Property" Letter; (d) Where the "Notice of Our Plan to Sell Property" Letter had a vehicle sale date that included the phrase "on or after"; and (e) Subsequent to receiving the "Notice of Our Plan to Sell Property" Letter, did not redeem or otherwise recover the vehicle from SC. (ECF 60, 61).

- For all Settlement Class Members, SC will waive all Deficiency Balances[9] on their SC accounts, which total approximately $355,000,000.00.[10]

- SC will pay $1,900,000.00 into a Settlement Fund which will be used to provide monetary relief to certain Settlement Class Members, as described below, and to pay an incentive payment to the Class Representative, as approved by the Court. Settlement Class Members whose repossessed vehicles were sold by SC and who made payments in excess of $100 to SC after repossession will be entitled to a cash benefit equal to a pro rata share of the Settlement Fund after the Incentive Payment.[11,12] The total payments made by Settlement Class Members after repossession is approximately $6,674,298.[13]

- SC will request the Credit Reporting Agencies Equifax, Experian, TransUnion and any other credit reporting agency to which SC reports to delete the reporting of the Settlement Class Members' Accounts that are the subject of this Settlement.[14]

- SC shall pay the Settlement Administrator's costs associated with disseminating the Class Notice and Revised Notice, setting up a Settlement Website, distributing funds, and any escrow, administrative and/or bank related fees and costs associated with the Settlement Administrator's duties, up to $65,000.[15]

## VI. THE SETTLEMENT SHOULD RECEIVE FINAL APPROVAL

### A. The Final Approval Process and Standards

It is well settled that "compromises of disputed claims are favored by the courts." *Williams v. First Nat'l Bank*, 216 U.S. 582, 595 (1910). "Being a preferred means of dispute

---

[9] "Deficiency Balance" means "the Account balance remaining after the repossession and disposition of a Settlement Class Member's vehicle, after crediting the Class Member's account with the sale price of the vehicle and including all interest and other charges." Settlement Agreement, ¶1.15. (P. 8) The Deficiency Balance is the unpaid loan balance that is owed by the Settlement Class Member.

[10] Settlement Agreement, ¶Q.i. (P. 4).

[11] *Id*., ¶Q.ii-iii (P.4).

[12] The Incentive Payment shall not exceed $10,000. Settlement Agreement, ¶5.2 (P. 25).

[13] Settlement Agreement, ¶3.34 (P. 21). When the Settlement Agreement was signed this figure was approximately $5,720,000. Due to the passage of time between the execution of the Settlement Agreement and this pleading, the current figure is approximately $6,674,298.

[14] *Id*., ¶Q.iv (O. 4); ¶3.4 (P. 21).

[15] Settlement Agreement, ¶Q.iv. (P. 4)

resolution, there is a strong presumption by courts in favor of settlement." *In re Telectronics Pacing Sys.*, 137 F. Supp. 2d 985, 1008 (S.D. Ohio 2001)(class action settlement). *See also*, *Cotton v. Hinton*, 559 F.2d 1326, 1331 (5th Cir. 1977) ("[I]n class action suits, there is an overriding public interest in favor of settlement."); *Enter. Energy Corp. v. Columbia Gas Transmission Corp.*, 137 F.R.D. 240, 246 (S.D. Ohio 1991) ("The law generally favors and encourages the settlement of a class action.").

The court should approve a class settlement if, following a hearing, the court determines that the settlement is fair, reasonable, and adequate. *In re Milk Antitrust Litig.*, 2012 WL 2236692, at *2 (E.D. Tenn. June 15, 2012). The decision to approve or reject a proposed class action settlement is committed to the court's sound discretion. *IUE-CWA v. General Motors Corp.*, 238 F.R.D. 583, 594 (E.D. Mich. 2006); *see also Class Plaintiffs v. City of Seattle*, 955 F.2d 1268, 1276 (9th Cir. 1992) (in context of class action settlement, appellate court cannot "substitute [its] notions of fairness for those of the [trial] judge and the parties to the agreement," and will reverse only upon strong showing of abuse of discretion); *Bailey v. Great Lakes Canning, Inc.*, 908 F.2d 38, 42 (6th Cir. 1990) (same). In exercising that discretion, the court "may limit the fairness hearing to whatever is necessary to aid it in reaching an informed, just and reasoned decision." *Tenn. Ass'n of Health Maint. Orgs., Inc. v. Grier*, 262 F.3d 559, 567 (6th Cir. 2001) (quoting *United States v. Oregon*, 913 F.2d 576, 582 (9th Cir. 1990)).

Although this Court must evaluate the Settlement to ensure it is fair, reasonable and adequate, a full trial is not contemplated. The settlement or fairness hearing is not to be turned into a trial or rehearsal for trial on the merits. *UAW v. GMC*, unreported at 2006 U.S. Dist. LEXIS 14890 (E.D. Mich. 2006). "Once a preliminary approval has been granted, a class action settlement is presumptively reasonable, and an objecting class member must overcome a heavy

8

burden to prove that the settlement is unreasonable." *Levell v. Monsanto Res. Corp.,* 191 F.R.D. 543, 550 (S.D. Ohio 2000). Because this Court has preliminarily approved the settlement, this class settlement is presumptively reasonable.

Courts in the Sixth Circuit have outlined seven factors relevant to a court's evaluation when determining if a settlement is "fair, reasonable and adequate." These factors are:

> (1) the risk of fraud or collusion;
> (2) the complexity, expense and likely duration of the litigation;
> (3) the amount of discovery engaged in by the parties;
> (4) the likelihood of success on the merits;
> (5) the opinions of class counsel and class representatives;
> (6) the reaction of absent class members; and
> (7) the public interest.

*Gascho v. Global Fitness Holdings, LLC*, 822 F.3d 269, 276 (6th Cir.2016) *citing UAW v. GMC*, 497 F.3d 615, 631 (6th Cir. 2007). The court "may choose to consider only those factors that are relevant to the settlement and may weigh particular factors according to the demands of the case." *IUE-CWA* 238 F.R.D. at 594-595; *Granada Investments, Inc. v. DWG Corp*., 962 F.2d 1203, 1205-1206 (6th Cir. 1992) ("The district court enjoys wide discretion in assessing the weight and applicability of these factors.").

**B.** **This Settlement Is Fair, Reasonable, Adequate And Should Be Approved**

Each of the factors described above supports approval of the Settlement.

**1.** ***The Likelihood Of Success On The Merits***

A comparison of what continued litigation might offer against what a settlement provides today is at the heart of a court's determination of whether a settlement is fair and reasonable. Plaintiff's likelihood of success at trial is "by far the most important factor" in evaluating a class action settlement. *Figueroa v. Sharper Image Corp*., 517 F. Supp. 2d 1292, 1323 (S.D. Fla. 2007). In weighing the likelihood of success on the merits against the relief offered in the settlement, the "ultimate question ... is 'whether the interests of the class as a whole are better

9

served if the litigation is resolved by the settlement rather than pursued.'" *IUE-CWA*, 238 F.R.D. at 594.

This comparison heavily weighs in favor of approval. The Settlement provides for full debt forgiveness of the Deficiency Balance, a benefit in excess of $355 million. Additionally, all Class Members will receive credit repair wherein SC will request that this unpaid debt tradeline be removed from the Class Members' credit report. This is a substantial benefit that has a large monetary value to the Class Members. Further, SC will make a $1,900,000 payment into a Settlement Fund which will be used to make cash payments to all Class Members whose repossessed vehicles were sold by SC and who made payments in excess of $100 to SC after repossession. As Judge O'Malley recognized, "[a] class action settlement may be particularly beneficial to the class if the risk of losing the case on the merits is high." *Lonardo v. Travelers Indem. Co.*, 706 F. Supp. 2d 766, 779 (N.D. Ohio 2010). The benefits that this Settlement guarantees today outweigh the risks of proceeding. Those risks are substantial and include the potential findings that this case is not suitable for class certification, that the post-repossession notice was appropriate and/or that waiver of all deficiency balances is not mandated even if the post-repossession notice was inappropriate.

2. ***The Future Expense And Duration Of Litigation Weighs In Favor of This Settlement***

The expense and likely duration of the continued litigation is another factor considered in determining the fairness of a settlement. *Telectronics*, 137 F. Supp. 2d at 1013. In this case, if not for this Settlement, the case would have continued to be litigated by both parties. Briefing and evidence would have to be presented and this Court would have to, at a minimum, decide the following questions: 1) Is this case appropriate for class certification; 2) Did the post repossession form notice used by SC violate Ohio law; and 3) If the notices did violate Ohio

law, what damages or relief is available to the class. These three "simple" questions would probably take years to answer. Further, any party that was aggrieved by one of the answers would retain that right of appeal, thus increasing the expense and duration of the litigation. The only guarantee is that absent this Settlement, substantial further expense and significant delay would occurr. *See In re Countrywide Fin. Corp. Customer Data Sec. Breach Litig.,* 2010 U.S. Dist. Lexis 87409, at *19 (W.D. Ky. 2010) ("…the settlement provides recovery without delay.").

### 3. *Experienced Class Counsel Support This Settlement*

Class Counsel believes this Settlement to be fair, reasonable and in the best interests of the Class. (*See Declaration of Ronald Frederick in Support of Plaintiff's Unopposed Motion And Memorandum In Support Of Final Approval Of Class Action Settlement* attached as Exhibit A. *See Declaration of Daniel Goetz in Support of Plaintiff's Unopposed Motion And Memorandum In Support Of Final Approval Of Class Action Settlement* attached as Exhibit B.) The judgment of Class Counsel that the Settlement is in the best interest of the settling parties "is entitled to significant weight, and supports the fairness of the class settlement." *UAW* at 2006 WL 891151, at *18 (citing *Mich. Hosp. Ass'n v. Babcock*, No. 5:89-CV00070, unreported at 1991 U.S. Dist. LEXIS 2058, at *6 (W.D. Mich. 1991) ("It is ... well recognized that the court should defer to the judgment of experienced counsel who has competently evaluated the strength of the proofs."); *Smith v. Ajax Magnethermic Corp.*, unreported at 2007 WL 3355080, at *5 (N.D. Ohio 2007) ("The Sixth Circuit has held that, in the context of approving class action settlements, the Court 'should defer to the judgment of experienced counsel who has competently evaluated the strength of his proofs'.").

Class Counsel are reputable practitioners experienced in complex and class action litigation. They have adequately assessed the strengths of their respective claims and positions.

*See UAW*, unreported at 2006 WL 891151, at *18.  "Under the law, their collective judgment in favor of the settlement is entitled to considerable weight." (CITE).  *See also*, *Ass'n for Disabled Americans, Inc., Disabled Americans, Inc. v. Amoco Oil Co.*, 211 F.R.D. 457, 467 (S.D. Fla. 2002) ("the Court must rely upon the judgment of experienced counsel and, absent fraud, 'should be hesitant to substitute its own judgment for that of counsel.'").  Class Counsel have regularly engaged in major complex class action and consumer litigation.  Where, as here, a Settlement is endorsed as fair by a team of experienced and sophisticated counsel after extensive litigation and negotiations, there is a strong presumption that the compromise is fair and reasonable.

4. **The Plaintiff Had More Than Adequate Discovery To Evaluate The Strengths And Weaknesses Of This Case**

To ensure that Plaintiff has had access to sufficient information to evaluate his case and to assess the adequacy of the settlement, the stage of the proceedings and the extent of discovery is another factor that is considered in determining the fairness of the settlement.  *Telectronics*, 137 F. Supp. 2d at 1015. Although this case settled before extensive deposition discovery, the reality is that liability and damages in this matter are dependent upon the forms used and the legal findings surrounding same.  Plaintiff was provided with over 20,000 pages of documents including all of the relevant forms, and, as such, Counsel have more than adequate information to evaluate this case.

5. **There Are No Objectors**

This matter involves a Class of approximately 44,697 members.  The objection deadline was March 4, 2021. To date, the Settlement Administrator has not received any objections.

6. **The Settlement Is The Result Of Good Faith, Honest Negotiations With The Absence Of Collusion**

This Settlement is the result of extensive, protracted and hard-fought negotiations.  There is no issue about the nature of this litigation.  The negotiations formally began with a mediation

in Chicago conducted by retired Federal Judge Morton Denlow.  Over the next year, the parties waxed and waned between active negotiations and active litigation.  Judge Denlow participated in some of the active negotiations and some were conducted between only the parties.  As evidenced by the recent motion to amend the class definition, these negotiations and fighting for the rights of absent class members did not end after preliminary approval. "Courts respect the integrity of counsel and presume the absence of fraud or collusion in negotiating the settlement, unless evidence to the contrary is offered." *In re Packaged Ice Antitrust Litig.*, 2011 U.S. Dist. LEXIS 17255, at *59 (E.D. Mich. 2011 (*quoting Int'l Union v. Ford Motor Co.*, No. 06-10331, 2006 U.S. Dist. Lexis 70471, at *26 (E.D. Mich. 2006)).  *See also, In re Countrywide Fin. Corp. Customer Data Sec. Breach Litig.,* 2010 U.S. Dist. LEXIS 87409, at *15 (same).

### 7. *The Settlement Is In The Public Interest*

This settlement is in the public interest.  "Class actions are meant to serve the public interest by providing an incentive for lawyers and class representatives to litigate on behalf of a group of people whose injury is legitimate and meaningful, but whose individual damages are not substantial enough to make litigation on an individual basis worthwhile."  *Lonardo*, 706 F. Supp. 2d at 782.  This Settlement, which provides for over $357 million in benefits to absent Class Members that they likely would not have discovered or pursued, is the very purpose of class action litigation.

## VII. THE REQUESTED INCENTIVE AWARD TO THE SETTLEMENT CLASS REPRESENTATIVE IS REASONABLE

The Settlement provides that Class Representative Rayburn will receive compensation in the amount of $10,000 in recognition of his efforts on behalf of the Class.  The attached Declaration from John Rayburn demonstrates his support for this Settlement, as well as the level of support, involvement and participation in this lawsuit. (*Declaration of John Rayburn*, attached

as Exhibit C.) Courts routinely award such "incentive awards" to persons who assume the special litigation burden of class representative and thereby benefit the entire class. *In re Dun & Bradstreet*, 130 F.R.D. at 373-74 (approving incentive awards ranging from $35,000 to $55,000 out of a $18 million settlement fund); *Brotherton v. Cleveland,* 141 F. Supp. 2d 907, 913-14 (S.D. Ohio 2001) (granting a $50,000 incentive award out of a $5.25 million fund).

The incentive award is proper as a common matter of class action practice and economic logic. Representative Plaintiff Rayburn exposed himself to investigation and undertook personally and successfully to achieve the benefit to the Class that this Settlement represents. The absent unnamed Class Members, by contrast, are the passive beneficiaries of Mr. Rayburn's efforts on their behalf.

## VIII. CONCLUSION

This Court should grant Final Approval to this Settlement finding it fair and reasonable. This Settlement provides a common benefit to the class in excess of $357 million. Additionally, the Court should award Mr. Rayburn an incentive payment of $10,000 for his efforts and diligence in serving as Class Representative.

Respectfully submitted,

Dated: March 30, 2021     By:    */s/Ronald Frederick*
Ronald Frederick (0063609)
Michael Berler (0085728)
Frederick & Berler LLC
767 E. 185th St.
Cleveland, Ohio 44119
(216) 502-1055
Fax: (26)609-0750
ronf@clevelandconsumerlaw.com
mikeb@clevelandconsumerlaw.com

By: */s/ R. Eric Kennedy*
R. Eric Kennedy (0006174)
Daniel P. Goetz (0065549)
1600 Midland Building
101 West Prospect Avenue
Cleveland, Ohio 44115
(216) 781-1111
Fax (216) 781-6747
ekennedy@weismanlaw.com
dgoetz@weismanlaw.com

*Counsel for Plaintiff John Rayburn and The Class*

## CERTIFICATE OF SERVICE

I hereby certify that on March 30, 2021, the foregoing was filed electronically. Notice of this filing will be sent to all parties by operation of the Court's electronic filing system. Parties may access this filing through the Court's system.

*/s/ Ronald Frederick*
*Counsel for Plaintiff John Rayburn and the Class*